[Crim. No. 12569. Second Dist., Div. Five. Apr. 21, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES DANIEL HUNT, Defendant and Appellant.

Charles M. Berg, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Plaintiff and Respondent.

HUFSTEDLER, J. — Defendant Hunt appeals from a conviction of violating section 12021 of the Penal Code (former felon's possession of concealable weapon) upon an information charging him with that offense and setting forth his alleged prior felony convictions. Hunt pleaded not guilty, denied the prior felonies[1] and waived jury trial. He was found guilty. His motion for a new trial was denied, and he was sentenced to the county jail for the time he had already served. The sole question presented upon appeal is the legality of the search and seizure without a warrant which produced the only evidence of possession subsequently introduced, over objection, at the time of trial.

*Summary of the Evidence*

On May 8, 1965, at 8 o'clock in the morning Deputy Sheriff Hipp, while sitting in his radio car, saw two men, Hunt and

[1]When a prior conviction is an element of the offense charged, as it is in a prosecution under Pen. Code, § 12021, the defendant is not called upon to admit or deny the former convictions. A conviction of the offense charged, without any special finding on the alleged priors, is necessarily a finding that the defendant was guilty of the priors. *People* v. *Davenport* (1962) 210 Cal.App.2d 335, 340 [26 Cal.Rptr. 753].

Porter, standing and talking with one another in the alley bordering a service station. The two men walked over to the service station attendant, Ebbanezer, then walked away from the attendant in opposite directions from each other. Hipp approached Ebbanezer and asked him if he knew the two men and what they were doing there. Ebbanezer replied that he did not know them, and "I was just going to call the station because they had been hanging around acting suspicious." This colloquy constitutes the entire conversation between Hipp and Ebbanezer. Ebbanezer did not testify at the trial. Thompson, another employee of the service station, arrived on the scene in time to see Hunt and Porter parting from each other and walking away from the station. Thompson "immediately . . . thought something was wrong. We had had previous robberies there." Thompson called out to Hunt asking him to come back because he wanted to talk to him. Hunt kept on walking. Hipp radioed Officer Chausse, who was driving another patrol car, and told him "to stop a male negro that was walking northbound in the alley towards 71st Street from Florence, that he was a suspicious person." While Hipp stopped Porter, Chausse drove his radio car down the alley to stop Hunt. When Chausse saw Hunt in the alley, he ordered him to come to the car. Hunt ignored him and kept on walking. Chausse alighted from the car and again ordered Hunt to come to him. Hunt obeyed the second command. Chausse patted Hunt down for weapons and felt what appeared to be a pistol inside his waistband on the right side. Chausse seized from Hunt a two-inch, blue steel, Smith & Wesson .38 revolver. Six rounds of cartridges were in the gun at the time of the seizure. Chausse "further shook him down" and found five more rounds of ammunition in Hunt's right front pocket. Chausse placed Hunt under arrest and drove him to meet Hipp.

## Legality of the Search

Hunt contends that the search of his person was not incidental to a lawful arrest upon probable cause and that the evidence was obtained by an illegal search and seizure. The People respond that Hunt's temporary detention and frisking were justified under the doctrine of *People* v. *Mickelson* (1963) 59 Cal.2d 448 [30 Cal.Rptr. 18, 380 P.2d 658], and that the fruits of the justifiable detention-and-frisk supplied probable cause for the arrest.

The California rule is "that circumstances short of probable cause to make an arrest may still justify an officer's

stopping pedestrians or motorists on the streets for questioning. If the circumstances warrant it, he may in self-protection request the suspect to alight from an automobile or to submit to a superficial search for concealed weapons. Should the investigation then reveal probable cause to make an arrest, the officer may arrest the suspect and conduct a reasonable incidental search." *People* v. *Mickelson, supra,* 59 Cal.2d 448, 450-451.

If the circumstances justified Hunt's temporary detention for questioning, the gun was not the product of an illegal search because it was discovered in the course of a superficial pat-down for weapons incident to the detention, and the discovery of the gun supplied probable cause for the arrest. Justification for the detention exists if, prior to the detention, Hipp had adequate cause to detain Hunt, if Chausse had such cause, or if the combined information of both Hipp and Chausse supplied adequate cause.

The direction by Hipp to Chausse to pick up Hunt was not, standing alone, justification for the detention. An order by one officer to another insulates the complying officer from assuming personal responsibility for the acts done in obedience to the order, but the order does not itself supply legal cause for the detention any more than the fact of detention supplies its own cause. We recognize that effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another, and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation of the transmitted information. The fact that an officer does not have to have personal knowledge of the evidence supplying good cause for a detention before he can obey a direction to detain a suspect does not mean that evidence of good cause for the detention need not be established at the trial to legitimate the detention and its products. If Hipp had adequate cause to detain Hunt, he could properly delegate the detention to Chausse, but if he did not have cause to detain Hunt, he could not create such cause simply by relaying an order to a fellow officer to detain Hunt. (Cf. *People* v. *Pease* (1966) 242 Cal.App.2d 442, 448-449 [51 Cal.Rptr. 448] ; *People* v. *Harvey* (1958) 156 Cal.App.2d 516, 521 [319 P.2d 689].)

█ Nothing which Hipp said he observed was out of the ordinary at the time and in the place in which Porter and Hunt were seen. Mere subjective suspicion does not justify

detention. (*People* v. *One 1960 Cadillac Coupe* (1964) 62 Cal.2d 92, 95-96 [41 Cal.Rptr. 290, 396 P.2d 706]; *Hood* v. *Superior Court* (1963) 220 Cal.App.2d 242, 245 [33 Cal.Rptr. 782].) Police officers can properly investigate a citizen's complaint involving a threat to public safety (*People* v. *Cove* (1964) 228 Cal.App.2d 466, 469 [39 Cal.Rptr. 535]), but Ebbanezer's reply to Hipp cannot properly be characterized as such a complaint; it was nothing more than a statement that Ebbanezer thought Hunt was a suspicious person. A private citizen's subjective suspicion is of no greater moment than a law enforcement officer's subjective suspicion in supplying reasonable cause to detain and question another citizen. Ebbanezer gave no explanation of the basis for his opinion. Thompson knew that the station had been previously robbed, but there is nothing in the record from which we can properly infer that Thompson conveyed his knowledge to Hipp prior to the time Hipp radioed Chausse. Hipp himself testified solely to his conversation with Ebbanezer. If he relied upon a statement by Thompson, he did not disclose that reliance in his testimony at the time of trial. Information which may be available to an arresting officer, but upon which he did not rely in making an arrest cannot be used to justify the arrest. (*People* v. *Gallegos* (1964) 62 Cal.2d 176, 178 [41 Cal.Rptr. 590, 397 P.2d 174].)

 In addition to the relayed direction to stop Hunt, Chausse had only Hunt's initial refusal to stop when Chausse ordered him to do so as justification for the detention. It is possible to infer from the record that Chausse could have heard Thompson calling to Hunt to stop. However, Chausse did not testify that he heard Thompson's call, and he did not testify that he relied upon Thompson's actions in detaining and frisking Hunt. The failure of Hunt to stop at Chausse's first command is not under the circumstances of this case sufficient to supply the requisite reasonable cause to detain and frisk Hunt. It will be recalled that Hunt was simply walking down the alley. There is no suggestion that he was fleeing or that his behavior was in any way furtive.

The evidence in this case, considered in every respect most favorably to the People, is nevertheless not as strong as the evidence recited in *People* v. *One 1960 Cadillac Coupe, supra,* 62 Cal.2d 92, which the Supreme Court held was inadequate to justify the detention or to legalize an accompanying search. The evidence produced by the frisk of Hunt was inadmissible.

It is of course elementary that an arrest cannot be justified by what is turned up from an illegal search. (*People* v. *Brown* (1955) 45 Cal.2d 640, 644 [290 P.2d 528].)

The judgment is reversed.

Kaus, P. J., and Stephens, J., concurred.