[Crim. No. 13613. Second Dist., Div. Three. Feb. 29, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. PHILLIP JOHN RUSSELL, Defendant and Appellant.

Milan Moacanin for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and Marjory Winston Parker, Deputy Attorneys General, for Plaintiff and Respondent.

COBEY, J.—On September 28, 1966, around 1:20 a.m., three young men, the appellant, his codefendant McConnell and a juvenile, stole the rear seat, two rear quarter panels and two front bucket seats from a new Volkswagen which was on the lot of Colome Motors, a Volkswagen dealership in Montebello, California.

Appellant was convicted of grand theft after a nonjury trial in which his codefendant, McConnell, who had pleaded guilty to petty theft, testified for the People. On motion of defendant for a new trial, the trial court modified its judgment against him to one of petty theft, (Pen. Code, § 1181,

subd. 6) placed him on probation for three years and fined him $250 as one of the conditions of probation.

 Appellant appeals from this modified judgment on the ground that he was convicted through the use of illegally-obtained evidence and that without such evidence, the testimony of his accomplice, McConnell, who identified him as the lookout, would have been legally insufficient within the meaning of Penal Code, section 1111. We are constrained to agree with appellant.

Penal Code, section 1111, requires that the testimony of an accomplice "be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense" and such corroboration is insufficient "if it merely shows the commission of the offense or the circumstances thereof." While there was some evidence from which appellant's presence at the scene of the theft could be inferred, the only evidence *connecting appellant with the commission of the theft,* (see *People* v. *Robbins,* 171 Cal. 466, 476 [154 P. 317] ; *People* v. *Lloyd,* 253 Cal.App.2d 236, 240-241 [61 Cal. Rptr. 138]) aside from McConnell's testimony that he was the lookout, was appellant's own extrajudicial statement to the · police somewhat to the same effect. But we need not decide the sufficiency of the corroboration of McConnell's testimony because, as we shall explain, the admission in evidence of appellant's statement constituted federal constitutional error necessitating reversal of the judgment. (See *People* v. *Ross,* 67 Cal.2d 64, 73 [60 Cal.Rptr. 254, 429 P.2d 606].)

Appellant contends that his statement was illegally and unconstitutionally obtained by the police. In support of this contention he argues that he was stopped and detained by the police without cause, that he was thereafter arrested without cause, and that his extrajudicial statement thereafter to the police was acquired from him in violation of the federal constitutional requirements declared in *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

To evaluate the validity of these arguments it will be necessary to set forth the circumstances surrounding both appellant's apprehension and his extrajudicial statement to the police. At approximately 1 :34 a.m. on September 28, 1966, Police Officer Stewart of the Monterey Park Police Department, while on vehicle patrol, was told by his radio dispatcher that two vehicles, possibly involved in a burglary of a Montebello Volkswagen agency, were northbound on a specified street near him. These two vehicles were described to him as a two-toned, gray Volkswagen bus and a red Mercury. About

one minute later he spotted two vehicles "right together." northbound on the street specified. The lead vehicle was a two-toned, light colored Volkswagen bus and the vehicle following it was a dark Volkswagen sedan. He immediately started following the two vehicles and at the same time informed the police units in the area of his discovery and of the location of the vehicles. A few minutes later the vehicles pulled up side by side at a street intersection and separated with the bus heading one way on a specified street and the sedan heading the opposite way on the same street. Officer Stewart advised the other police units he was going to stop the bus and radioed Officer Mendoza of his department to stop the other vehicle. Stewart then stopped the bus in which he found McConnell and the juvenile, both of whom he detained.

Upon receipt of Officer Stewart's radio call, Officer Mendoza, who was nearby, looked over to where Officer Stewart was and saw that he had stopped the bus. Mendoza then proceeded along the street specified by Stewart in search of the other vehicle. He had received the same description of the second vehicle which Stewart had received—that is, a red Mercury. The only car that Mendoza could find on this street, however, was a black Volkswagen sedan which was turning off the street in a northbound direction. Mendoza followed and stopped this car. Its sole occupant was appellant. The stop was made over two miles from the scene of the theft and at about 1:45 a.m.

Officer Mendoza asked appellant for his driver's license and then informed him that a burglary had just occurred in Montebello and that appellant was a possible suspect. Mendoza then requested appellant to accompany him to where Officer Stewart had stopped the bus. Appellant consented and went with Mendoza in Mendoza's car. The bus was approximately a quarter of a mile away from where Mendoza had stopped appellant.

A couple of minutes after Officer Mendoza and appellant had joined Officer Stewart, McConnell and the juvenile at the bus, Officer Acuna of the Montebello Police Department appeared in response to a police radio call. In the one-half hour or so between the theft and the apprehension of the three suspects, Officer Acuna had visited the scene of the theft, had ascertained what had been stolen and had reported this information to his radio dispatcher. He had also heard the same radio broadcast about the suspect vehicles and their location which Officers Stewart and Mendoza had initially heard. Upon

his arrival at the scene of the detention of the three suspects, he at once checked the interior of the bus and confirmed that it contained the stolen property. He also discovered that the bus was registered to a Russell, which is appellant's family name. He then placed all three suspects under arrest and took them to the Montebello police station.

In support of his contention that the extrajudicial statement to the police was improperly admitted in evidence, appellant asserts, as previously indicated, that it was obtained as the poisonous fruit of an illegal stopping, detention and arrest by the police. None of these assertions has any merit.

Circumstances short of probable cause to make an arrest may well justify an officer in stopping a motorist for questioning; (*People* v. *Mickelson,* 59 Cal.2d 448, 450 [30 Cal. Rptr. 18, 380 P.2d 658]) and the stopping and detention of a person for such a purpose does not *necessarily* constitute an arrest. (*People* v. *Gibson,* 220 Cal.App.2d 15, 21 [33 Cal.Rptr. 775].) As stated in *People* v. *Perez,* 243 Cal.App.2d 528, 531 [52 Cal.Rptr. 514] : ''There must, however, be some suspicious circumstance to justify even such a limited interference with an individual's freedom of movement. [Citations.] There is no precise formula by which it can be determined whether an officer acted lawfully in stopping a pedestrian or a motorist for questioning; the test is '. . . when the circumstances are such as would indicate to a reasonable man in a like position that such a course is necessary in the proper discharge of his duties.' [Citations.] The reasonableness of an officer's action depends upon the facts and circumstances of the particular case.''

Here, Officer Mendoza, in deciding whether to stop appellant, properly relied upon the prior information which he had received through regular police channels, with respect to the suspect vehicles. (See *People* v. *Hunt,* 250 Cal.App.2d 311, 314 [58 Cal.Rptr. 385].) Furthermore he could properly decide, as he did, that the uniqueness of the location of the car in which appellant was riding outweighed its lack of correspondence with the description he had of the car in view of the nocturnal hour and the extremely short interval of time which had elapsed since the theft. (Cf. *People* v. *Henze,* 253 Cal.App.2d 986, 988-989 [61 Cal.Rptr. 545].) We believe that in choosing to stop appellant, as he did, Officer Mendoza not only acted legally, he also acted commendably.

Likewise, we do not believe that appellant was arrested before Officer Acuna formally placed him under arrest. Appellant accompanied Officer Mendoza to the place

where Officer Stewart was detaining the other two suspects voluntarily following his own expressed consent to do so. (See *People* v. *Shaw*, 237 Cal.App.2d 606, 619-620 [47 Cal.Rptr. 96], cert. den., 384 U.S. 964 [16 L.Ed.2d 676, 86 S.Ct. 1594].)

 Finally in this connection we hold that Officer Acuna had probable cause to arrest appellant at the time he did so. Although the record does not expressly so show, it may reasonably be inferred that prior to appellant's arrest appellant was identified by name to Officer Acuna and Acuna had been informed by Officer Mendoza that appellant had been apprehended in a black Volkswagen sedan.[1] Moreover, Officer Acuna had learned, as stated above, that the Volkswagen bus in which the stolen property was found was registered to a person bearing appellant's family name.[2] Under these circumstances Officer Acuna, as a man of ordinary care and prudence, had reason to believe and conscientiously entertain an honest and strong suspicion that appellant had been involved in the theft under investigation. (See *People* v. *Ingle*, 53 Cal.2d 407, 412-413 [2 Cal.Rptr. 14, 348 P.2d 577].)

We now turn to the sole meritorious point raised by appellant—the claimed federal constitutional error made in obtaining his extrajudicial admission or incriminating statement. Upon arriving at the Montebello police station with the three suspects at approximately 2 a.m., Officer Acuna separated appellant from the other two suspects and then immediately commenced to interrogate the other two. He first questioned the juvenile. Then he interrogated McConnell, who was 18 years old. This interrogation began with Acuna confirming from McConnell that McConnell had already been advised of his constitutional rights at the scene of his arrest and that he understood them fully. Nevertheless Acuna next advised McConnell again of his specific constitutional rights to remain silent and to retained or appointed counsel. But, following this, in asking McConnell to give him a statement

---

[1] It will be recalled that Officer Mendoza had asked for appellant's driver's license immediately after stopping him. Furthermore the record shows that Officer Acuna asked appellant at the scene of his arrest whether he had been advised of his constitutional rights by the Monterey Park police officers. Appellant stated that he had. Acuna then asked him if he understood these rights. Appellant said he did. Acuna then asked him if he knew anything about the incident but appellant denied knowledge of it.

[2] There is also some slight evidence that the police description of the suspected vehicles, which Officer Acuna then had, included as the third vehicle a Volkswagen sedan. With regard to the bus McConnell subsequently testified that he though the bus belonged to appellant as prior to the theft he had seen appellant driving it around.

with regard to the theft, Acuna, by his own admission, "possibly" said to McConnell in essence, "It might be best if you do this. The judge might let it go easier on you if you confess and tell the truth."[3]

Acuna began interrogating appellant in a separate detention cell of the station at approximately 2:10 to 2:15 a.m. No one was there except the two of them. Acuna first said to appellant that "he had the right to remain silent; that anything he said might and would be used against him in court; that he had the right of an attorney being present during all phases of interrogation; and if he was financially unable to afford an attorney that he would be provided with one." Acuna asked appellant if he understood these rights and appellant said he did. Acuna then said to appellant that "it might be better for him if he talked" or words to that effect.[4] Following this last bit of advice and after some further unspecified interrogation, appellant, who had at first stated that he was nowhere near Colome Motors, said, "He was nearby on the hill" and "was aware of what was going to happen." Acuna then gave appellant a piece of paper so that he might write down and sign an admission of guilt and left him alone to do this. Upon Acuna's return he discovered that appellant had ripped up the paper. Appellant then said to Acuna "I'll talk this over with my dad before I sign anything." Consequently no signed written admission from appellant of his guilt was obtained by the police.

The question presented for decision by Acuna's conduct in obtaining appellant's oral admission is whether such conduct prevented an effective waiver by appellant of his constitutional right to remain silent. *Miranda* makes clear that a heavy burden of proof rests upon the prosecution to demonstrate that a suspect, in custody and without counsel present, knowingly and intelligently waived his constitutional privilege against compulsory self-incrimination before giving any type of statement to the police. (*Miranda* v. *Arizona, supra,* 384 U.S. 436, 475, 476-477 [16 L.Ed.2d 694, 724, 725].) *Miranda* explains that the specific warnings it enunciates. all of which were given by Acuna to appellant, are required to ensure that the statement obtained from the suspect is "truly the product of his free choice" (384 U.S. at p. 458 [16 L.Ed.

---

[3] Officer Acuna could not recall whether before he advised McConnell of his constitutional rights he told McConnell that the juvenile had made a written confession to him. Acuna did tell McConnell that he did not have to comply with Acuna's request that he write out his confession.

[4] This admission was developed on cross-examination.

2d at p. 714, 86 S.Ct. 1602, 10 A.L.R.3d 974]) or " 'in the unfettered exercise of his own will.' " (384 U.S. at p. 460 [16 L.Ed.2d at p. 715, 86 S.Ct. 1602, 10 A.L.R.3d 974].) *Miranda* points out that police coercion during custodial interrogation can be mental or psychological as well as physical (*Id.* 384 U.S. at p. 448 [16 L.Ed.2d at pp. 708-709, 86 S.Ct. 1602, 10 A.L.R.3d 974]), and subtle as well as blatant (384 U.S. at p. 466 [16 L.Ed.2d at p. 719, 86 S.Ct. 1602, 10 A.L.R.3d 974]); and that therefore the suspect must be informed "in clear and unequivocal terms that he has the right to remain silent." (384 U.S. at p. 468 [16 L.Ed.2d at p. 720, 86 S.Ct. 1602, 10 A.L.R.3d 974].) According to *Miranda* "any evidence that the accused was threatened, tricked or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege." (384 U.S. at p. 476 [16 L.Ed.2d at p. 725, 86 S.Ct. 1602, 10 A.L.R.3d 974].)

Stated otherwise, under *Miranda* an effective waiver of a suspect's right to remain silent cannot occur unless that suspect has first been given an *adequate* warning of that right. Whether an adequate warning has been given is purely a question of law where there is no conflict in the evidence upon the point. (See *People* v. *Underwood,* 61 Cal.2d 113, 121 [37 Cal.Rptr. 313, 389 P.2d 937].) Such is the case here.

The record does not establish that appellant was adequately advised of his rights as required by *Miranda* prior to the interrogation by Officer Acuna in the Montebello police station. It is true that Officer Acuna did testify that appellant admitted that at the scene of the arrest he had been advised of his "rights" by the Monterey Park officers. This testimony, by reason of its generality, did not meet the prosecution's burden of proving that appellant had been given the advice required by *Miranda*.[5] (See *People* v. *Powell,* 67 Cal.2d 32, 49-50 [59 Cal.Rptr. 817, 429 P.2d 137].)

In our opinion the adequacy of the warning given to appellant by Officer Acuna himself was destroyed by Acuna's supplementing that advice with "It might be better for you if you talked." This bit of gratuitous advice nullified and made ineffective his previous admonition to appellant to the contrary. At the very least it qualified and rendered unclear that

[5] Similarly the fact that Officer Stewart of the Monterey Park police at the scene of their arrest gave to McConnell and the juvenile adequate *Miranda* warnings, does not meet the prosecution's burden of proof that he gave there subsequently identical warnings to appellant.

which, under *Miranda*, must remain unqualified, clear and unequivocal.

Since the admonition given to appellant did not meet *Miranda* standards, we do not have to reach the question of whether the evidence is sufficient to support the trial court's implied finding that appellant's response to Officer Acuna's questions was freely made. However, even if we were to regard Officer Acuna's advice that ''It might be better for you if you talked'' as a separate inducement which did not detract from the preceding statement of rights, we would still be of the view that appellant's statement was inadmissible because Officer Acuna acted improperly. The applicable rule under pre-*Miranda* law was stated in *People* v. *Hill*, 66 Cal.2d 536, 549 [58 Cal.Rptr. 340, 426 P.2d 908], as follows: ''When the benefit pointed out by the police to a suspect is merely that which flows naturally from a truthful and honest course of conduct, we can perceive nothing improper in such police activity. On the other hand, if in addition to the foregoing benefit, or in the place thereof, the defendant is given to understand that he might reasonably expect benefits in the nature of more lenient treatment at the hands of the police, prosecution or court in consideration of making a statement, even a truthful one, such motivation is deemed to render the statement involuntary and inadmissible.'' The words ''it might be better for you'' when made, as in this case, to a suspect in the isolation of an interrogation room can too easily be interpreted as an implied threat or cajolery to be equated with a statement whose sole purpose is to point out to the suspect the benefit which ''follows naturally from a truthful and honest course of conduct.''

The judgment is reversed.

Moss, J., concurred.

FORD, P. J.—I dissent.

The resolution of the question of whether the defendant Russell voluntarily, knowingly and intelligently waived his constitutional rights as defined in *Miranda* was within the province of the trial judge. (See *People* v. *Lara*, 67 Cal.2d 365, 389 [62 Cal.Rptr. 586, 432 P.2d 202].) Officer Acuna's statement to Russell that it might be better if he talked did not establish as a matter of law that Russell's subsequent statement was not the product of his free and intelligent choice. (See *People* v. *Hill*, 66 Cal.2d 536, 549-550 [58 Cal. Rptr. 340, 426 P.2d 908].) In the exercise of his function of

determining the inferences reasonably to be drawn from the evidence, the trial judge was not precluded from finding that there was no offer or promise, express or implied, of leniency of any nature. Accordingly, the trial judge was warranted in reaching the conclusion that Russell's response was not the product of cajolery but resulted from his choice, made voluntarily, knowingly and intelligently, to waive his right to counsel and his right to remain silent. Since Russell's statement was admissible, it furnished sufficient corroboration of the testimony of the accomplice. (*People* v. *Wade,* 53 Cal.2d 322, 329 [1 Cal.Rptr. 683, 348 P.2d 116].)

I would affirm the judgment.

A petition for a rehearing was denied March 26, 1968, and the opinion was modified to read as printed above. Ford, J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied April 24, 1968. McComb, J., Mosk, J., and Burke, J., were of the opinion that the petition should be granted.