[Crim. No. 14966.   Second Dist., Div. Two.   Dec. 18, 1968.]

THE PEOPLE, Plaintiff and Appellant, v. LOUIS TURNER JACKSON, Defendant and Respondent.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger, District Attorney, Harry Wood and Maurice H. Oppenheim, Deputy District Attorneys, for Plaintiff and Appellant.

Richard S. Buckley, Public Defender, Elizabeth Trowbridge and James L. McCormick, Deputy Public Defenders, for Defendant and Respondent.

NUTTER, J. pro tem.*—This is an appeal by the People, pursuant to Penal Code section 1238, subdivision 7, from an order of dismissal of the superior court, suppressing evidence and dismissing the case wherein the defendant had been charged with violation of section 11530 of the Health and Safety Code of California, possession of marijuana.

The search and seizure question was considered by the superior court on the transcript of the testimony taken at the preliminary hearing and additional testimony taken at the hearing conducted in accordance with section 1538.5 of the Penal Code. The superior court ruled as a matter of law that the detention of respondent for investigation was improper.

On October 4, 1967, Clarence E. Nelson, a gas station manager at 9435 Long Beach Boulevard, South Gate, observed two Negroes in a Rambler looking at him as the car went around the corner. These same two persons immediately thereafter came walking into the service station between 9 and 10 p.m. They had parked their car about a block away from the service station because, as appellant testified, the motor was cutting out. One of the men purchased a package of cigarettes from Nelson. The two men then left and appeared to watch him. Nelson was afraid he would be held up and called the South Gate police. Police officers in uniform arrived within ten minutes. When the officers arrived the two men were standing at a telephone booth located near the service station. Nelson pointed to the booth and one of the men, the respondent, ran as the officers approached. Respondent's companion told the officer he did not know why respondent ran; that their car had broken down and they couldn't get it repaired. The officer put out a broadcast to stop the defendant, giving a general description and stated that the suspect might be wearing a dark leather jacket and carrying a large portable radio. In checking out the Rambler parked nearby the officer observed that the engine was running and there was

---

*Assigned by the Chairman of the Judicial Council.

a .portable radio and· two jackets and suit coat in the car. When the officers returned to the automobile they found the portable radio and the two jackets were missing. Officer Miller, then added to his broadcast that the person might be wearing, a jacket and carrying a large radio.

Sergeant Stewart, the arresting officer, testified that he received information by radio that a citizen at an address two blocks north and one block west of the service station had noticed a male Negro wearing·a leather jacket and carrying a portable radio alongside his vehicle that was parked in the driveway; the citizen went out to question him, since he believed the man was stealing his hubcaps. After explaining that a dog had barked and scared him .and that was the reason, he was beside the vehicle, the man ran into the Edison right-of-way, westbound. Sergeant Stewart further testified that he received additional information from an Officer Spencer by radio that Officer Spencer had seen a suspect in dark clothing, carrying an object, running across Calden Street which is about two blocks east of Alameda Street.

Sergeant Stewart first saw defendant at 92d and Alameda in a dirt area in the Edison Power Company right-of-way alongside a semi-truck. He stopped the defendant, ordered him to place his hands above his head, and patted him down for weapons. He felt a hard metal object that Sergeant Stewart believed to be an automatic pistol in respondent's left pants pocket. Sergeant Stewart reached inside respondent's left pants pocket and pulled out a 380 foreign blue steel automatic with seven shells in the clip. He then arrested the respondent for carrying a loaded concealed weapon and because he matched the radio description.

Officer Doorlag was present when Sergeant Stewart arrested respondent. He escorted respondent to the police car, asked him if he had any other weapons and upon receiving no answer searched respondent. The Officer found the marijuana cigarettes in respondent's right hand coat pocket.

Respondent was brought back later by the police and identified by Mr. Nelson. At the time respondent was returned to the station by the police, he was wearing a brown leather jacket that he did not have on when he was at the service station earlier.

The trial judge's dismissal in this case was founded upon the holding of the court in *People* v. *Hunt*, 250 Cal.App.2d 311 [58 Cal.Rptr. 385]. The *Hunt* case as in the case at bench, involved a situation where a service station attendant was suspicious of a possible robbery. The service station attendant

reported his suspicions to law enforcement officers and when the defendant was asked to return to talk to officers he kept on walking and the defendant was then arrested after walking away because he was a "suspicious person." He was patted down for weapons and a revolver was recovered. In the *Hunt* case the court was careful to point out that Hunt's action was not out of the ordinary. The court held that a citizen's mere subjective suspicion without other facts or justifying circumstances does not supply reasonable cause to detain and question another citizen; that the officer had only the defendant's initial refusal to stop when ordered to do so as justification for the detention. The court pointed out: "The failure of Hunt to stop at Chausse's first command is not under the circumstances of this case sufficient to supply the requisite reasonable cause to detain and frisk Hunt. It will be recalled that Hunt was simply walking down the alley. There is no suggestion that he was fleeing or that his behavior was in any way furtive." (*People* v. *Hunt, supra,* at p. 15.)

██ While it is the rule that the existence of probable cause is not determined by an analysis of the extent of subjective certainty of the arresting officer, but by an objective standard of reasonableness (*Brineger* v. *United States* (1948) 338 U.S. 160 [93 L.Ed. 1879, 69 S.Ct. 1302]), in this case there were several objective circumstances to justify the detention and patdown; these included the possible misstatement about whether the car was running or broken down; the running away from the phone booth; the removal of the jackets and the radio from the car and the abandonment of the car; the report from a citizen that the man who appeared to be stealing his hubcaps fitted the description previously given of the defendant; a further report that a person in dark clothing carrying something was running away. Finally, when the officer reached the defendant he was patted down and a hard metal object was felt which the officer believed to be a weapon.

Under the rule of *Terry* v. *Ohio,* 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868] and *Sibron* v. *New York,* 392 U.S. 40 [20 L.Ed.2d 917, 88 S.Ct. 1889], the patdown and cursory search for weapons was appropriate. There was a rational suspicion by the officer that some activity out of the ordinary had taken place. There was some indication to connect the person under suspicion with the unusual activity. Finally, there was a suggestion that the activity was related to crime. Sergeant Stewart could rely on the radio broadcasts describing activities of a person fitting respondent's description; his activities as

described were "unusual activities." (*People* v. *Lara*, 67 Cal.2d 365, 373 [62 Cal.Rptr. 586, 432 P.2d 202]; *People* v. *Gardner*, 252 Cal.App.2d 320, 325-326 [60 Cal.Rptr. 321].) Finally, the totality of the circumstances in the instant case suggest that "the activity was related to crime," a "casing" of the service station in preparation for a robbery. (Cf: *People* v. *Cowman*, 223 Cal.App.2d 109 [35 Cal.Rptr. 528].)

It has consistently been held that there is nothing unreasonable in an officer's questioning a person outdoors at night. A defendant's evasive and irregular tactics may give the police reasonable grounds to pursue and halt him for investigative purposes. (*People* v. *Ruhman*, 224 Cal.App.2d 284, at p. 287 [36 Cal.Rptr. 493].) Therefore, the detention of respondent for investigation was proper. As an incident to the detention, Sergeant Stewart could pat down the respondent for a superficial search for concealed weapons before any questioning. (*People* v. *Henze*, 253 Cal.App.2d 986 [61 Cal. Rptr. 545]; *People* v. *Mickelson*, 59 Cal.2d 448 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Martin*, 46 Cal.2d 106, 108 [293 P.2d 52].)

Of course, the discovery of the gun justified respondent's arrest for violation of section 12025 of the Penal Code (*People* v. *Hunt, supra*, 250 Cal.App.2d 311, 314), and the subsequent search of respondent which produced the marijuana was incident to that arrest. (*People* v. *Carmical*, 258 Cal. App.2d 103 [65 Cal.Rptr. 504].)

The order is reversed.

Roth, P. J., and Fleming, J., concurred.