[Civ. No. 28298. First Dist., Div. One. Dec. 1, 1970.]

JAMES JOSEPH RESTANI, Petitioner, v.
THE SUPERIOR COURT OF LAKE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Jennings, Gartland & Tilly, Michael T. Morton and John F. Henning for Petitioner.

No appearance for Respondent.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, and Derald E. Granberg, Deputy Attorney General, for Real Party in Interest.

OPINION

**MOLINARI, P. J.**—Petitioner was charged with possession of a restricted dangerous drug, to wit, amphetamine, in violation of Health and Safety Code section 11910, and with possession of marijuana, in violation of Health and Safety Code section 11530. A motion to suppress evidence pursuant to Penal Code section 1538.5 was denied by the superior court and we issued an alternative writ of prohibition in order to provide appellate review of the ruling as provided in section 1538.5.[1]

The pertinent facts are as follows: Officer Biddle of the Lake County Sheriff's Department, while on patrol, overheard a radio transmission to the effect that there was an all-points bulletin for a murder suspect in a white-over-maroon Volkswagen bus. The information regarding this vehicle originated in the following manner.

Although the record does not clearly indicate, it is apparent that a certain vehicle was suspected of involvement in a murder in San Jose. The pertinent portion of a San Jose police bulletin dated August 5, 1969 stated that "Seen near the location of the bodies during the afternoon was a white van type vehicle variously described as a *Dodge, Chevrolet, Ford* van, or *Volkswagen.*" (Italics added.) This bulletin was presumably relayed to law enforcement agencies throughout the state. However, when the information reached Sergeant Elton Lee of the California Highway Patrol by way of a dispatcher in Ukiah, the suspect vehicle was specifically described as a maroon Volkswagen bus with a white V on the front of it. The dispatcher informed Sergeant Lee that he had received the information from Chico which in turn had received the information from an officer in Red Bluff who had talked with a "citizen," who, insofar as may be gleaned from

---

[1]Petitioner also made a motion pursuant to Penal Code section 995 to set aside the information on the ground that defendant was committed without probable cause. This motion was also denied but review of that order is precluded in the instant proceeding because the instant petition was not filed within 15 days after the denial of such motion. (Pen. Code, § 999a.)

the record, was not identified. Sergeant Lee immediately passed on the bulletin to the sheriff's office. The sheriff's broadcast was received by Officer Biddle.

En route to the general area where the vehicle was believed to be heading,[2] Biddle observed a vehicle matching the broadcast descriptions. He placed the vehicle under surveillance and followed it to a dead-end street. He did not at any time turn on his siren or the red light. Neither did he blow his horn. The suspect vehicle came to a stop in front of a house. Officer Biddle parked his patrol vehicle about 75 feet behind the suspect vehicle. Biddle, in plainclothes, emerged from his vehicle, and identified himself as a police officer as he was walking towards petitioner who had emerged from his vehicle and was walking toward the officer. Petitioner was requested to produce identification. Petitioner inquired as to the reason for his being stopped. Officer Biddle replied that petitioner's vehicle was a possible suspect vehicle in a crime committed in the Bay Area. Petitioner, followed by Biddle, went to his vehicle to get his driver's license. He reached inside and took a shaving kit from the floor, opened it and retrieved a wallet containing his license. Petitioner handed the license to Biddle. Biddle then asked if petitioner had been in the Bay Area, and if he had, when was the last time. Petitioner stated that he hadn't done anything and that if Biddle wanted to search the car he could do so. Petitioner then went around and opened all the doors of the vehicle and showed Biddle the "different areas of the car." The officer gave no indication whatsoever that he had any intention of or desire to search petitioner's vehicle. Biddle noticed that the vehicle had Bay Area license frames. As he followed petitioner around the vehicle, he observed through the open driver's door a white double-scored tablet in a red transparent plastic box inside the open shaving kit. Believing that the tablet was amphetamine, Biddle immediately placed petitioner under arrest. After advising petitioner of his rights, Biddle searched the car. The search revealed items believed by Biddle to be amphetamines, LSD, and marijuana.

On cross-examination, Biddle testified that he had been attached to the Lake County narcotics detail for nine months. Prior to that time he had 3,000 hours of experience, in-service training, and actual work as an undercover agent for the Sonoma County sheriff's office, the state Bureau of Narcotics Enforcement, the San Francisco and Berkeley Police Departments, the Marin County sheriff's office, and in his own private investigator business. He had also attended drug seminars on narcotics, and had made numerous arrests for possession of drugs having similar appearance as the tablet in the shaving kit and the ones discovered in the search of the vehicle.

---

[2]There is no indication as to the source of this information.

■ Petitioner contends that (1) because the People failed to produce at the hearing the officer or officers who initiated the all-points bulletin, they have failed to show probable cause for the initial detention, and (2) mere sight of the white-scored tablet does not give rise to probable cause for arrest for illegal possession of narcotics.

Adverting to petitioner's contentions, we observe that the validity of petitioner's arrest depends upon whether the People have sustained their burden of showing probable cause for petitioner's initial detention. If such burden has not been met we must then determine whether there was probable cause for the arrest obtained by means sufficiently distinguishable to purge the primary taint attendant the illegality of an unpermitted detention.

■ The law is well established in this state that circumstances short of probable cause to make an arrest may justify the stopping by an officer of pedestrians or motorists on the streets for investigation or questioning. Should the investigation then reveal probable cause to make an arrest, the officer may arrest the suspect and conduct a reasonable incidental search. (*People* v. *Simon,* 45 Cal.2d 645, 650 [290 P.2d 531]; *People v. Blodgett,* 46 Cal.2d 114, 117 [293 P.2d 57]; *People* v. *Mickelson,* 59 Cal.2d 448, 450-451 [30 Cal.Rptr. 18, 380 P.2d 658].)

■ However, to justify even a limited detention as a necessary course in the proper discharge of an officer's duties, there must exist some suspicious or unusual circumstances which are sufficiently distinguishable from innocent activity so that taken together with the rational inferences to be drawn from the facts, they would reasonably warrant the conclusion that criminal activity is afoot. (*Terry* v. *Ohio,* 392 U.S. 1, 21-22 [20 L. Ed.2d 889, 905-906, 88 S.Ct. 1868]; *People* v. *One 1960 Cadillac Coupe,* 62 Cal.2d 92, 94-96 [41 Cal.Rptr. 290, 396 P.2d 706]; *People* v. *Moore,* 69 Cal.2d 674, 683 [72 Cal.Rptr. 800, 446 P.2d 800]; *Irwin* v. *Superior Court,* 1 Cal.3d 423, 426-427 [82 Cal.Rptr. 484, 462 P.2d 12]; *Cunha* v. *Superior Court,* 2 Cal.3d 352, 356-357 [85 Cal.Rptr. 160, 466 P.2d 704]; *Remers* v. *Superior Court,* 2 Cal.3d 659, 664-665 [87 Cal.Rptr. 202, 470 P.2d 11]; *Hood* v. *Superior Court,* 220 Cal.App.2d 242, 245 [33 Cal.Rptr. 782].)

■ It is also established that even though there are no unusual or suspicious circumstances warranting detention by the detaining officer he may, nevertheless, detain a person for investigation or questioning upon the basis of information received through "official channels." (*People* v. *Hunt,* 250 Cal.App.2d 311, 313-314 [58 Cal.Rptr. 385]; *People* v. *Russell,* 259 Cal.App.2d 637, 642 [66 Cal.Rptr. 594]; see *People* v. *Lara,* 67 Cal.2d 365, 374 [62 Cal.Rptr. 586, 432 P.2d 202]; *Remers* v. *Su-*

*perior Court, supra,* 2 Cal.3d 659, 666-667; and see *People* v. *Madden,* 2 Cal.3d 1017, 1021 [88 Cal.Rptr. 171, 471 P.2d 971] for the application of this principle to arrests.) However, if the detaining officer himself does not have personal knowledge of facts justifying the detention, but acts solely on the basis of information or direction given him through police channels, the prosecution must establish in court, when challenged, evidence showing that the officer who originally furnished the information had probable cause to believe that the suspect had committed a felony, or, at the very least, that such officer was in possession of facts amounting to circumstances short of probable cause which would have justified him to personally make the detention. (See *People* v. *Pease,* 242 Cal.App.2d 442, 450 [51 Cal.Rptr. 448]; *People* v. *Hunt, supra,* at p. 314; *People* v. *Rice,* 253 Cal.App.2d 789, 792-793 [61 Cal.Rptr. 394]; *People* v. *Wohlleben,* 261 Cal.App.2d 461, 465-467 [67 Cal.Rptr. 826]; *People* v. *Escollias,* 264 Cal.App.2d 16, 18-19 [70 Cal.Rptr. 65]; *People* v. *Adkins,* 273 Cal.App.2d 196, 198-199 [78 Cal.Rptr. 397]; *Lockridge* v. *Superior Court,* 275 Cal.App.2d 612, 619-620 [80 Cal.Rptr. 223]; *People* v. *Lara, supra; Remers* v. *Superior Court, supra; People* v. *Madden, supra.*)

■ As succinctly stated in *People* v. *Hunt, supra,* at page 314: "An order by one officer to another insulates the complying officer from assuming personal responsibility for the acts done in obedience to the order, but the order does not itself supply legal cause for the detention any more than the fact of detention supplies its own cause. . . . ■ The fact that an officer does not have to have personal knowledge of the evidence supplying good cause for a detention before he can obey a direction to detain a suspect does not mean that evidence of good cause for the detention need not be established at the trial to legitimate the detention and its products." As applied to this case, if the officer who initiated the broadcast has adequate cause to detain petitioner, he could properly delegate the detention to Officer Biddle, but if he did not have cause to detain, he could not create such cause by simply relaying an order to a fellow officer to detain petitioner.

■ According to the testimony presented at the hearing below, the all-points bulletin received by Officer Biddle originated from a conversation another officer had with an unidentified "citizen" in Red Bluff. The officer who had this conversation was not in court to testify under oath. It therefore cannot be determined whether he had reasonable cause to either detain petitioner or order his detention. The original bulletin from San Jose described the suspect vehicle variously as a Dodge, Chevrolet, Ford van or Volkswagen. This description was too broad and indefinite to justify the detention of any vehicle. However, by the time the bulletin reached Ukiah, the description had somehow been narrowed to a "maroon-over-white" Volkswagen

bus. The record provides no clue as to the basis for this modification. Under such circumstances, while Officer Biddle acted properly in detaining petitioner for investigation in reliance on the radio broadcast, the prosecution did not, when it came to justifying the *total police activity* in court, sustain its burden of establishing probable cause for the detention. As observed in *Remers, supra,* in situations of this kind " 'when it comes to justifying the total police activity in a court, the People must prove that the source of the information is something other than the imagination of an officer who does not become a witness.' " (2 Cal.3d at p. 666.)

■ In view of the foregoing we do not agree with the People's contention that there was no detention prior to Biddle's observation of the amphetamine tablet which was exposed to plain view and which became observable because of petitioner's own eagerness to persuade the officer that he had done nothing wrong. Although Officer Biddle did not turn on his vehicle siren or use its red light, the record clearly indicates that there was a detention. After both vehicles came to a stop in a dead-end street, Biddle asked petitioner to produce some identification and, when queried as to why petitioner was being stopped, Biddle told him the vehicle was suspected of involvement in a crime committed in the Bay Area. It is clear, therefore, that at this point of time petitioner was not free to go, at least not until he produced some identification.

■ The failure of the People to sustain its burden of establishing probable cause for detention by failing to present as a witness the officer who initiated the original broadcast or the officer who had the conversation with the "citizen" in Red Bluff, does not, however, vitiate petitioner's arrest unless such arrest was an exploitation of such illegal detention.

Biddle's observation of the amphetamine tablet in the shaving kit was not "tainted" merely because petitioner might not have opened the kit *but for* the officer's demand to see his identification. ■ Not "all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police." Rather, the appropriate test is " 'whether granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' [Citation.])" (*Wong Sun* v. *United States* (1963) 371 U.S. 471, 487-488 [9 L.Ed.2d 441, 455-456, 83 S.Ct. 407]; *People* v. *Bilderbach* (1965) 62 Cal.2d 757, 765 [44 Cal.Rptr. 313, 401 P.2d 921]; *People* v. *Stoner* (1967) 65 Cal.2d 595, 602 [55 Cal.Rptr. 897, 422 P.2d 585]; *People* v. *Johnson* (1969) 70 Cal.2d 541, 546 [75 Cal.Rptr. 401, 450 P.2d 865]; *People* v. *Superior Court* (1970) 3 Cal.App.3d 476, 490-491 [83 Cal.Rptr. 771].)

Under the *Wong Sun* test the evidence in question is not excluded merely because it would not have been obtained but for the illegal police activity if the connection between such evidence and the illegal activity has become attenuated so as to dissipate the taint. (*People* v. *Superior Court, supra,* 3 Cal.App.3d 476, 491; *People* v. *Bilderbach, supra,* 62 Cal.2d 757, 766.) Accordingly, if the prosecution can establish that the primary illegality was not a *sine qua non* or indispensable cause of the discovery of the physical evidence, but, that at worst it merely contributed to such discovery, the exclusionary rule does not apply. (*People* v. *Superior Court, supra;* see Maguire, *How To Unpoison the Fruit—The Fourth Amendment and the Exclusionary Rule* (1964) 55 J. Crim. L.C. & P.S. 307, 313.)

 In the instant case petitioner was not under arrest while he was being detained for purposes of identification and investigation. At no time did Biddle give any indication that he intended to conduct a search of the car. When petitioner first retrieved his driver's license from the shaving kit, Biddle merely looked at the license and asked petitioner if he had been in the Bay Area. At this stage of the detention it is probable that Biddle might have terminated the investigation and concluded that there was no cause for further detention. Petitioner, however, volunteered that he had done nothing wrong and stated that if Biddle wanted to he could search the car. Without waiting for Biddle's reply, petitioner proceeded to open all the doors in order to show him the different areas of the vehicle. Biddle followed petitioner around the vehicle. It was while they were standing by the open door on the driver's side that Biddle fortuitously observed the amphetamine tablet in the shaving kit on the floor of the car. Under these factual circumstances the trial judge could determine that the discovery of the amphetamine occurred not solely and indispensably because of the prior detention but because of petitioner's eagerness to persuade Biddle that he had done nothing wrong. In sum, the presumptive taint was removed by the establishment as a fact that the illegal detention merely contributed to the discovery of the allegedly tainted physical evidence and that it was not a *sine qua non* or indispensable cause of the discovery. Accordingly, the evidence was purged of the primary taint by circumstances occurring during the detention which served to attenuate the connection between the illegal detention and the discovery of the amphetamine.

We observe, moreover, that Biddle did not conduct a search of the car at any time prior to the discovery of the amphetamine which was in open view, a circumstance which likewise dilutes the taint of the illegal detention. To see what is in plain sight does not constitute an unreasonable search because under such circumstances there is not a search for evidence. (*People* v. *Superior Court, supra,* 3 Cal.App.3d 476, 492; *People* v. *Roberts,* 47 Cal.2d

374, 378-380 [303 P.2d 721]; *People* v. *Martin,* 45 Cal.2d 755, 762 [290 P.2d 855].) Of course, upon such discovery and the placing of petitioner under arrest for possession of the amphetamine tablet, the subsequent search was valid and an incident of that arrest. (*Cooper* v. *California,* 386 U.S. 58, 61 [17 L.Ed.2d 730, 733, 87 S.Ct. 788]; *People* v. *Webb,* 66 Cal.2d 107, 124-126 [56 Cal.Rptr. 902, 424 P.2d 342, 19 A.L.R.3d 708]; *Chimel* v. *California,* 395 U.S. 752, 764, fn. 9 [23 L.Ed.2d 685, 694, 89 S.Ct. 2034].)

██ Petitioner also contends that Biddle did not have probable cause to arrest for illegal possession of narcotics upon sighting the double-scored tablet, because "at the time he arrested petitioner, [he] had no idea as to whether petitioner had a prescription for the suspected amphetamine and conducted no investigation to determine same." This argument is not meritorious. It disregards the fundamental rule that an officer may arrest when he has reasonable cause to believe that the person arrested has committed a felony. The test, at the time of arrest, simply is whether the officer is reasonable in his belief.

Biddle testified that he had some 3,000 hours of in-service training in narcotics with various law enforcement agencies in this state and had attended a drug seminar pertaining to dangerous drugs, and had made numerous arrests for possession of drugs having similar appearance as the tablet in the shaving kit and the ones discovered in the search of the vehicle. Having such expert knowledge in narcotics detection, Biddle was justified in making the arrest upon sighting the tablet which he believed to be contraband. The fact that he did not ask petitioner if he had a prescription for the amphetamine tablet is immaterial. The test is probable cause to believe, not absolute certainty, that a felony has been committed. Based on his previous experiences, Biddle could reasonably conclude that, more likely than not, an individual possessing amphetamine or other narcotics in public does so without any prescription.

The alternative writ of prohibition is discharged and the peremptory writ of prohibition is denied.

Sims, J., and Elkington, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied January 28, 1971. Peters, J., was of the opinion that the petition should be granted.