20 Cal.App.3d 384 (1971)
97 Cal. Rptr. 646
THE PEOPLE, Petitioner,
v.
THE SUPERIOR COURT OF TULARE COUNTY, Respondent; RICHARD ALLAN MARTIN et al., Real Parties in Interest. THE PEOPLE, Plaintiff and Appellant,
v.
RICHARD ALLAN MARTIN et al., Defendants and Respondents. (Consolidated Appeals.)
Docket Nos. 1549, 1134.
Court of Appeals of California, Fifth District.
September 30, 1971.
*386 COUNSEL
Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Daniel J. Kremer and Loren E. McMaster, Deputy Attorneys General, for Petitioner in Civ. No. 1549 and for Plaintiff and Appellant in Crim. No. 1134.
Ashman, Beverly & Hannon, David A. Ashman and Michael Hannon for Real Parties in Interest in Civ. No. 1549 and for Defendants and Respondents in Crim. No. 1134.
No appearance for Respondent in Civ. No. 1549.
OPINION
GARGANO, J.
Defendants were charged with possession of marijuana in violation of section 11530 of the Health and Safety Code. They moved to suppress the evidence pursuant to Penal Code section 1538.5 and to dismiss the information pursuant to section 995 of the Penal Code; both motions were granted. The People appeal from the order of dismissal and seek a writ of mandate to vacate the order of suppression. Since the court granted both motions because it concluded that the incriminating evidence against defendants was the product of an unlawful search and seizure, we *387 have consolidated the appeal with the mandamus proceeding. (People v. Superior Court, 276 Cal. App.2d 581 [81 Cal. Rptr. 42].)
On February 20, 1971, between 4 and 4:30 a.m., a black hearse, occupied by four young men, entered Cecil and Jim's Mobil Station at Pixley, California. The driver ordered $5 worth of gasoline, and to pay for the purchase someone in the car handed the attendant, Charles Banes, a credit card issued in the name of one "Annette Ross." Banes did not see a female occupant in the vehicle, and because he was under instructions to "check out" all credit cards used for purchases made after 10 p.m., he called a special number provided for that purpose; Banes was told to "pick up" the card. The attendant informed the driver that he was going to keep the card and was paid in cash for the purchase. The hearse left the station, and Banes called Deputy Sheriff Barker and told him what had happened. He also gave the deputy the hearse's license number and the direction in which it was going.
Deputy Barker and his partner, Deputy Beavers, were riding in a police car when they observed the hearse traveling north on Highway 99 at about 35 or 40 miles an hour. Barker was driving, and he followed the suspect vehicle for about five or six miles before turning on his red light to effectuate a stop; he testified that he was waiting for a lighted area in which to stop the vehicle. As the officer turned on the red light and the high beams of the patrol car's headlights, he saw the occupants of the hearse passing objects about and throwing them out of the window. The hearse came to a stop, and Barker approached on the driver's side while his partner covered the passenger side. Barker told the defendants to get out of the hearse and subjected them to a pat-down search. Afterward the officers ordered the four young men to sit in the patrol car while they walked back along the highway to search for the objects which had been thrown out of the vehicle. Barker found eight rolled up cigarettes containing what appeared to be marijuana strewn along the highway; three more marijuana cigarettes were found in the hearse.
(1) The officers had probable cause to arrest the defendants and to search the vehicle if it can be assumed that the car was properly stopped. (People v. Nichols, 1 Cal. App.3d 173 [81 Cal. Rptr. 481]; Vaillancourt v. Superior Court, 273 Cal. App.2d 791 [78 Cal. Rptr. 615]; People v. Barcenas, 251 Cal. App.2d 405 [59 Cal. Rptr. 419].) Barker testified that as he turned on the red light and the high beams of the patrol car's headlights he saw items being passed about inside the hearse and some eight or fifteen of the objects being thrown out of a window of the suspect vehicle; eight marijuana cigarettes were found strewn along the highway. The officer also testified that he smelled burnt or burning marijuana emanating from inside the *388 hearse; Barker had been employed in the Los Angeles County Narcotic Division, and he said he had participated in numerous marijuana arrests and had smelled burning marijuana about 200 times.
(2a) The crucial question is whether Deputy Barker had sufficient cause to stop the hearse in the first instance. If the officer did not have sufficient cause to stop the vehicle, the events which took place after the stop may not be used to justify the search and seizure. (Wong Sun v. United States, 371 U.S. 471, 488 [9 L.Ed.2d 441, 455-456, 83 S.Ct. 407]; People v. Bilderbach, 62 Cal.2d 757, 766 [44 Cal. Rptr. 313, 401 P.2d 921].)[1]
The provocation required to permit a police officer to temporarily detain a person for questioning is not the same as that required for a valid arrest or a lawful search. (People v. Mickelson, 59 Cal.2d 448 [30 Cal. Rptr. 18, 380 P.2d 658].) (3) In this state we adhere "to the proposition that a police officer may question a person outdoors at night when the circumstances are such as would indicate to a reasonable man in like position that such a course is necessary to the discharge of his duties." (People v. Ellsworth, 190 Cal. App.2d 844, 846 [12 Cal. Rptr. 433]; Irwin v. Superior Court, 1 Cal.3d 423 [82 Cal. Rptr. 484, 462 P.2d 12].) (4) As Mr. Justice Traynor explained in People v. Mickelson, supra, at page 452: "We do not believe that our rule permitting temporary detention for questioning conflicts with the Fourth Amendment. It strikes a balance between a person's interest in immunity from police interference and the community's interest in law enforcement. It wards off pressure to equate reasonable cause to investigate with reasonable cause to arrest, thus protecting the innocent from the risk of arrest when no more than reasonable investigation is justified." (5) Nevertheless, the right of a police officer to stop a motorist for questioning is not without constitutional restriction. (People v. Horton, 14 Cal. App.3d 930 [92 Cal. Rptr. 666].) A mere hunch or subjective suspicion will not justify a temporary detention; there must be some suspicious or unusual circumstance to justify even this limited invasion of a citizen's privacy. (Terry v. Ohio, 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868]; People v. One 1960 Cadillac Coupe, 62 Cal.2d 92 [41 Cal. Rptr. 290, 396 P.2d 706].) "And unusual activity alone, unless there is some suggestion that it is related to criminality, is insufficient." (Williams v. Superior Court, 274 Cal. App.2d 709, 711-712 [79 Cal. Rptr. 489]; People v. Henze, 253 Cal. App.2d 986 [61 Cal. Rptr. 545].) To justify even a temporary detention for questioning, there must be some rational suspicion that an activity out of *389 the ordinary has taken place, some indication to connect the detained person with that activity, and some suggestion that the activity is related to crime. (Flores v. Superior Court, 17 Cal. App.3d 219 [94 Cal. Rptr. 496]; People v. Jackson, 268 Cal. App.2d 306 [74 Cal. Rptr. 40].)
(2b) We conclude that Officer Barker had reasonable cause to stop the defendants' vehicle and to detain them for reasonable questioning. The four young men were riding in a black hearse at 4:30 o'clock in the morning. The driver had attempted to purchase gasoline with a credit card issued in the name of "Annette Ross"; there was no female in the automobile. When the attendant checked out the card by calling the number provided for that purpose, he was told to "pick it up." There was ample basis for the officer to entertain a rational suspicion that some activity out of the ordinary had taken place and to suspect that the activity was related to crime. (People v. Jackson, supra, 268 Cal. App.2d 306, 309.) It would be inconceivable to think that if Deputy Barker had been present at the service station when the incident occurred he could not have questioned the possessor of the credit card; if the temporary detention for questioning could have taken place at the service station, it could have taken place a block away or at the spot where the automobile was properly stopped on the highway. (6) It is settled that the police can rely on information furnished by third persons, though not of proven reliability, to justify temporary detentions for reasonable investigation. (People v. Carmical, 258 Cal. App.2d 103 [65 Cal. Rptr. 504]; People v. Perez, 259 Cal. App.2d 371 [66 Cal. Rptr. 473]; People v. Jackson, supra, 268 Cal. App.2d 306.)
(7) In rebuttal, defendants insist that mere possession of someone else's credit card is not per se an unusual circumstance relating to criminality. But in a credit card age credit cards are credit badges and easily can be utilized by thieves to cheat and defraud innocent persons. While it may be true that mere possession of another person's credit card is not per se an unusual circumstance, when such possession is coupled with a direction by the responsible agency to "pick up" the card, it gives rise to a plausible suggestion of criminal conduct warranting reasonable police detention for questioning. In upholding a limited invasion of a citizen's privacy under these circumstances, we strike "a balance between a person's interest in immunity from police interference and the community's interest in law enforcement." (People v. Mickelson, supra, 59 Cal.2d 448, 452.)
Defendants also suggest that the detention for questioning of a person who has attempted to use another person's credit card only elicits the denial of wrongdoing and serves no useful purpose unless a suspect is actually arrested. They evidently conclude that the inconvenience caused to citizens *390 by such intrusions on their privacy outweighs the benefit to be derived by society and does not strike the balance required to justify temporary detentions in cases where there is no probable cause to arrest.
We reject defendants' sophistical reasoning. The very purpose for the rule sanctioning temporary detention is to ward off "pressure to equate reasonable cause to investigate with reasonable cause to arrest, thus protecting the innocent from the risk of arrest when no more than reasonable investigation is justified." (People v. Mickelson, supra, 59 Cal.2d 448, 452.) While it may be true that in the great majority of cases where a person attempting to use someone else's credit card is detained for reasonable questioning the result is only a denial of wrongdoing, the fact remains that a police officer may secure the individual's identity, place of residence and pertinent details which would facilitate a suspect's apprehension if a subsequent investigation should disclose that the card was stolen. Contrary to respondent's contention, the slight inconvenience of questioning relating to a person's identity, residence or other details, discourages unwarranted arrests of innocent persons.
At this point we wish to make it clear that we are aware of the fact that the record is susceptible to the interpretation that Deputy Sheriff Barker's real motive in stopping defendants' vehicle was not to investigate the credit card and that he may have been on a "fishing expedition." Had the trial judge made his rulings on this basis, we would have been faced with one of the problems we dealt with in People v. Gonsoulin, 19 Cal. App.3d 270 [96 Cal. Rptr. 548].[2] However, the judge's statement in the record clearly shows that he did not suppress the evidence in this case because he believed that Deputy Barker had an ulterior motive for stopping the defendants; he based his ruling solely on the belief that the deputy did not have sufficient basis to investigate the report he had received on the credit card, and we have limited our discussion accordingly.
The case of People v. Gonsoulin, supra, 19 Cal. App.3d 270, is also distinguishable from the instant case in that we were vitally concerned there with a prolonged detention which was tantamount to an arrest; furthermore, the prolonged detention occurred at a time when the officers did not know that there was a "hold" on the credit card, and after they had secured all the information necessary to facilitate the apprehension of defendants if a subsequent investigation had disclosed the card was stolen.
In 5 Civ. 1549 let a peremptory writ of mandate issue directing the *391 superior court to vacate its order granting defendants' motion to suppress the evidence; in 5 Crim. 1134 the order is reversed.
Stone, P.J., and Brown (G.A.), J., concurred.
NOTES
[1] Defendants testified that Deputy Barker and Deputy Beavers approached their vehicle with drawn guns and searched it immediately. We are not, however, concerned with the conflict in the testimony. The trial judge indicated he believed Barker's testimony but stated that he was granting the motion to suppress because he did not believe that the officer had sufficient grounds to stop the hearse in the first instance.
[2] The Gonsoulin opinion was filed August 13, 1971, and is not yet final.