[Crim. No. 13148.   Second Dist., Div. Five.   Aug. 22, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. DARRELL PETER RICE, Defendant and Appellant.

Donald F. Roeschke, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Richard Tanzer, Deputy Attorney General, for Plaintiff and Respondent.

KAUS, P. J.—Defendant appeals from a conviction of second degree burglary.

The only substantial point is the legality of defendant's arrest, which arrest yielded a specimen palm print, which matched a like print discovered in the burglarized premises.

On May 18, 1966, at 4 a.m., Officer Adams was driving his police car eastbound on Hollywood Boulevard. Near Hollywood Boulevard and Highland Avenue he saw two other police officers talking to the defendant and another person. He did not stop, but cruised by slowly. Defendant and the other person were both wearing tight capri pants and loud colored sweaters. Defendant's hair was long, the hair of the other person was bleached blond. They appeared to Adams to be female impersonators.

When Adams made these observations he was responding to a call somewhere east of the scene. Having completed his business he returned along Hollywood Boulevard in a westerly direction. As he passed the 6500 block he saw the defendant and his companion standing on the sidewalk. No one else was near them. This was about 45 minutes after he had first observed them being interviewed by the police. He proceeded

westbound for about 5 to 10 minutes, when he received a call to the effect that a silent burglar alarm was being sounded at 6520 Hollywood Boulevard, about three to four stores from where he had last seen the defendant. He went to that address and saw that the display window of a wig shop had been broken. Several mannequins in the window were bald. He called the owner of the store and other police units. He stayed at the scene until somebody connected with the wig shop and the police units arrived.

George Riddell, the manager of the shop, had left it at about 7 p.m. the night before. When he returned at 10 a.m. after the burglary, he observed the broken plate glass window and noticed that several wigs were missing from the manne- quins. There was "glass all over" and a brick in the window. The window was located in such a fashion next to the en- trance of the store that there was no access to it from the inside of the store without a key. Six wigs and several smaller hair pieces were missing.

On May 20 at about 5 a.m. Officer Violano, who was in the company of Officer Nepper, received a call that there were "car prowlers" on Bronson near Hollywood Boulevard. The two officers drove there to investigate. No car prowlers were discovered, but defendant and four other people were walking in the vicinity. They came upon the scene as Violano was questioning somebody whom he had observed lying in the back seat of a car. After defendant arrived Officer Nepper went to the police car and read the "daily occurrence sheet." On that sheet defendant was mentioned as a possible suspect in the wig shop burglary. He was described as a "male Caucasian, six foot-one, approximately 165 to 170, red hair, light com- plexion." The occurrence sheet also gave his name, date of birth and other data "which was taken off of a field interview which was made in Hollywood on Highland . . ." Defend- ant was asked to identify himself, which he did. The "identi- fication matched this description along with the physical identification."

Defendant was then arrested on the burglary charge. A palm print was obtained. The print matched a print found on a portion of the broken glass of the wig shop window. Expert testimony established that the latter print was on the inside surface of the glass fragment in question.

On appeal counsel raises two points: 1. The evidence is insufficient to support the conviction of burglary; and 2. the

792

specimen palm print was obtained after an illegal arrest and should have been excluded as being the product thereof.

■ The first point requires no discussion of any length. The physical facts surrounding the breaking of the window together with the missing merchandise certainly permit the inference that the window was broken and entered for the purpose of theft. Defendant was placed near the scene of the crime by Officer Adams and his palm print was discovered in a spot where it could not have been left except after the window had been broken by someone. We think the evidence of guilt is overwhelming.

We turn to the legality of the arrest.

■ As far as the totality of all knowledge possessed by various members of the police department is concerned, it seems clear that there was probable cause to make the arrest. Again, defendant was near the burglarized premises at a time when few other people were about and his appearance was such that it was not unreasonable to conclude that he had a use for wigs. Certainly if Officer Adams had seen him again after he had become aware of the burglary, an arrest would have been proper.

This does not, however, dispose of the problem. Defendant was not arrested by Officer Adams, but by Violano. When suspects are arrested without warrant by officers who have not, themselves, gathered all of the information which gives rise to probable cause, peculiar problems of proof arise. On the one hand, it is obvious that the law cannot demand that investigations be conducted by single officers who then must also make the arrest. Criminal investigation is not that simple.

■ On the other hand, the mere fact that the arresting officer believes, in all good faith, that somebody else has gathered sufficient information to make the arrest legal, cannot relieve the prosecution of the burden of proving the legality of the arrest, if it is challenged. (*People* v. *Hunt*, 250 Cal.App.2d 311 [58 Cal.Rptr. 385]; *People* v. *Pease*, 242 Cal.App.2d 442, 448-449 [51 Cal.Rptr. 448]; *People* v. *Harvey*, 156 Cal.App.2d 516, 521 [319 P.2d 689].) ■ We also think that the People must prove not only that the collective knowledge of the investigating authorities justified the arrest, but that such knowledge was funneled to the arresting officer either by imparting it to him or, more simply, by the giving of an order or request to make the arrest by someone who, in turn, was possessed of such collective knowledge. (*People* v. *Hunt, supra.*)

■ We agree with defendant that the mere fact that the daily occurrence sheet, which was consulted by the arresting officers, contained sufficient information to justify the arrest is insufficient to prove its legality unless there is evidence concerning the matters which went onto the occurrence sheet. Otherwise probable cause becomes a "do it yourself" proposition, manufacturable by the simple process of committing hunches to paper.[1]

■ We believe, however, that in the present case all requirements were satisfied. Officer Adams testified to the physical description of defendant and it was reasonable for the trial court to infer that it was he who furnished such description for incorporation in the daily occurrence sheet.

The officer who was interviewing defendant when Adams first observed him on Hollywood Boulevard did not testify. It will be recalled that Adams did not learn defendant's name on either of the two occasions when he saw him. Yet even if we assume, in defendant's favor, that the arrest would not have been made but for the fact that defendant's name matched that on the daily occurrence sheet, again it seems reasonable to infer, as the trial court apparently did, that the policeman who interviewed defendant at 4 a.m. learned his name on that occasion. Thus the intelligence gathered by the two officers on the night of the burglary was combined on the daily occurrence sheet and properly channeled to the arresting officer.

The judgment is affirmed.

Hufstedler, J., and Stephens, J., concurred.

---

[1]There is a line of decisions beginning with *People* v. *Hood*, 150 Cal. App.2d 197 [309 P.2d 856] and presently ending with *People* v. *Sanders*, 250 Cal.App.2d 123, 130 [58 Cal.Rptr. 259] in which the statement that "police officers may rely on information coming to them from official sources" (*People* v. *Schellin*, 227 Cal.App.2d 245, 251 [38 Cal.Rptr. 593]) appears and reappears in various forms. The case at bar does not make it necessary to determine whether these decisions represent an exception to the strict requirements of proof announced by the *Harvey-Pease-Hunt* line of cases mentioned in the opinion. We assume, in defendant's favor, that while the officer on the beat may reasonably rely on information coming to him from official sources when making the arrest, this does not relieve the People, at the trial, from the burden of proving that the source of the information was something other than the imagination of another law enforcement officer.