[No. A017217. First Dist., Div. Two. June 20, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
ALEX ROMANOSKI, Defendant and Appellant.

**COUNSEL**

Juliana Drous, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Kristofer Jorstad and Ronald D. Smetana, Deputy Attorneys General, for Plaintiff and Respondent.

---

## OPINION

**FLAHERTY, J.**\*—Alex Romanoski appeals from a judgment of conviction on two counts of burglary. (Pen. Code, § 459.)

Both the hearing on the motion to suppress evidence and subsequent trial were based on the preliminary hearing transcript. After the preliminary hearing but before trial, appellant agreed to waive his right to a jury trial in exchange for the guarantee that he would be convicted of at most two counts of no more than second degree burglary and sentenced to a maximum three years in prison. Pursuant to this agreement, the remaining three counts were dismissed.[1]

On appeal, appellant claims that he did not expressly waive his privilege against self-incrimination, right to trial by jury, or right of confrontation upon submission of his case on the preliminary hearing transcript as required by *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592 [119 Cal.Rptr. 302, 531 P.2d 1086]. ■ Respondent concedes that appellant did not waive his privilege against self-incrimination. This error alone requires reversal of the judgment. (*People* v. *Davis* (1980) 103 Cal.App.3d 270, 275 [163 Cal.Rptr. 22].)

Because of appellant's possible retrial, we will address additional issues as presented by the briefs.

The preliminary hearing transcript indicates that on or about October 16, 1981, at 3:30 p.m., Mr. Allen Toy and his family left their home at 908 Junipero Way in Salinas. The Toys left an entrance to the house unlocked, as they were expecting a painter to visit their house.

When Mr. Toy returned home, he noticed that some belongings in his bedroom had been moved, and a video recorder, camera, jade and some cash were missing.

Officer John Butz of the Salinas Police Department investigated this burglary. He determined that a lamp had been moved near a window, and was able to obtain one fingerprint from that lamp.

---

*Assigned by the Chairperson of the Judicial Council.

[1]The three dismissed counts were receiving stolen property, resisting arrest, and reckless driving. (Pen. Code, §§ 496, 148; Veh. Code, § 23103.)

On November 25, 1981, Mrs. Ethyl Pray left her home at 114 San Miguel Avenue in Salinas and returned on November 28, 1981. On her return, she noticed that the back door of her house was open and the house had been ransacked. Several items, including silver service for 12, stereo equipment and jewelry were missing.

Prior to the two burglaries, on October 10 or 11, 1981, Detective John Bohannan of the Salinas Police Department was told by Detective Lee Rossman of the West Covina Police Department that a warrant for the arrest of appellant was outstanding. According to Detective Rossman, appellant had been charged with an armed robbery in Los Angeles County, but failed to appear on the date set for trial. A bench warrant was issued for his arrest. The police also had information that appellant and Carol Ann Summers were frequent companions, and further, that Ms. Summers was in Salinas.

On December 1, 1981, Detective Bohannan saw a 1974 Ford, the two occupants of which he recognized as appellant and Ms. Summers. He followed the vehicle, and then attempted to stop it by activating his red lights. The driver of the vehicle accelerated, and a 70 m.p.h. chase of approximately two miles ensued.

After the vehicle stopped, the driver ran away from the officer, but was soon apprehended in a nearby apartment complex. Detective Bohannan then noticed some items in the back seat of the vehicle which he identified as property reported stolen from the Pray house in the police report of that burglary.

Appellant contends that the trial court erred by overruling his motion to suppress all evidence obtained in the search of the automobile incident to his arrest. Appellant claims the prosecution failed to prove the existence of a warrant for appellant's arrest since neither the warrant nor a certified copy thereof was admitted into evidence. Accordingly, he maintains that all evidence obtained as a result of that arrest is inadmissible.

Respondent asserts that the admission into evidence of a copy of the warrant, in addition to testimony from Detective Rossman who saw the warrant and told Detective Bohannan of its existence, was sufficient to establish the warrant's existence.

In spite of respondent's assertion, a copy of the warrant was *not* admitted into evidence. Detective Rossman possessed a copy of a "memorandum of

the existence of a warrant," but did not possess a copy of the warrant itself, nor was one ever actually admitted into evidence.[2]

■ "It is well settled that while it may be perfectly reasonable for officers in the field to make arrests on the basis of information furnished to them by other officers, 'when it comes to justifying *the total police activity* in a court, the People must prove that the source of the information is something other than the imagination of an officer who does not become a witness.' [Citations.] To hold otherwise would permit the manufacture of reasonable grounds for arrest within a police department by one officer transmitting information purportedly known by him to another officer who did not know such information, without establishing under oath how the information had in fact been obtained by the former officer. [Citations.] 'If this were so, every utterance by a police officer would instantly and automatically acquire the dignity of official information; "reasonable cause" or "reasonable grounds," . . . could be conveniently fashioned out of a two-step communication; and all Fourth Amendment safeguards would dissolve as a consequence.' [Citation.]" (*Remers* v. *Superior Court* (1970) 2 Cal.3d 659, 666-667 [87 Cal.Rptr. 202, 470 P.2d 11], quoted with approval and italics added in *People* v. *Ramirez* (1983) 34 Cal.3d 541, 551 [194 Cal.Rptr. 454, 668 P.2d 761].)

In *People* v. *Wohlleben* (1968) 261 Cal.App.2d 461 [67 Cal.Rptr. 826], the defendant had complained of the absence of the original arrest warrants and the introduction of secondary evidence of their existence without a proper foundation being laid. The court found that upon defendant's objection as to the competency of the evidence of the warrants, it became incumbent on the prosecution to prove that the defendant was, in fact, the person named in the warrant. It was held that "[u]nless a foundation is laid for the use of other evidence, no evidence of the contents of a writing other than the writing itself is admissible." (*Id.,* at p. 466.)

---

[2]At the suppression hearing, there was discussion about whether Detective Rossman had a copy of the warrant with him at the preliminary hearing:

"THE COURT: Let's forget so much why the bench warrant was issued, but the existence of the warrant, let's talk about that. He had a copy of the warrant with him?

"MR. MICHAEL: No, he didn't, really. He had—no copy of that warrant went in evidence.

"THE COURT: There was a paper referred to.

"MR. MICHAEL: Yes, there was. That was me referring to it. I went through his file and what he had, it looked like to me, it was a form that a police department fills out if they hear somewhere that a warrant has been issued. It was not a copy.

"THE COURT: It was a memorandum of the existence of a warrant.

"MR. MICHAEL: I think that would be a fair statement. But it was not an abstract of the warrant. It wasn't a warrant. And that's what we were attacking in this case."

The court's characterization of the document as a "memorandum of the existence of a warrant" has not been challenged.

In *Hewitt* v. *Superior Court* (1970) 5 Cal.App.3d 923 [85 Cal.Rptr. 493], the court dealt with a similar situation. The *Hewitt* court found that testimony of an officer who actually saw an abstract of a warrant come over a teletype machine was an adequate foundation for the introduction of that abstract as secondary evidence of the warrant. In *Hewitt*, "the prosecution offered not only the officer's testimony that he had seen a telegraphic abstract, but a copy of the abstract." (*Id.*, at p. 929.) The court determined that sufficiently satisfied the rule enunciated in *Wohlleben*, that the original warrant should be produced. (*Id.*, at pp. 929-930.)

Reliance on *Hewitt* is missplaced in this case. At the preliminary hearing Detective Rossman admitted not being present when the warrant was originally issued, and gave conflicting testimony as to whether he ever actually saw the warrant.[3] In addition, as previously noted, no written copy of a warrant or "memorandum of the existence of a warrant" was introduced into evidence.

Although not precisely on point, we find *People* v. *Ramirez, supra,* 34 Cal.3d 541, particularly instructive for a proper determination on this issue. In *Ramirez,* a police officer, suspicious that two men were "up to something," approached the pair and asked them to identify themselves. The men complied by giving their names and addresses. The officer radioed for a warrant check and was informed that the computer revealed an outstanding bench warrant for defendant's arrest. The officer arrested defendant and during the booking search discovered a tinfoil bindle containing PCP. De-

---

[3]At the preliminary hearing the following colloquy occurred:

"Q. Then you were not present when anyone issued a failure to appear or a bench warrant for this defendant; is that correct?

"A. No. I was contacted by the D.A.

"Q. But you had no personal knowledge then of a bench warrant being issued for this defendant; am I correct?

"A. I don't understand your question as to personal knowledge.

"Q. You weren't in court when it occurred?

"A. That's correct.

"Q. You didn't see the warrant; am I correct?

"A. No.

"MR. MICHAEL: Your Honor, I'm going to move to strike his testimony.

"THE COURT: Overruled. It's a business record. You physically saw this warrant, I presume?

"THE WITNESS: Yes.

". . . Q. Do you have that warrant here?

"A. I may have a copy.

"MR. MICHAEL: May I check and see what he has, Your Honor?

"THE COURT: Yes, you may.

"THE WITNESS: Yes, I have a copy of it.

"BY MR. MICHAEL: Q. Do you have a certified copy?

"A. No, I don't. The original is in the possession of the Los Angeles County Sheriff's Department."

fendant argued that his arrest and subsequent booking search were unlawful because the warrant on which the officer relied had been recalled several months earlier, and because no independent probable cause existed to arrest him. Our Supreme Court agreed, stating that "[i]f in *Remers* the inability of the People to justify the field officer's probable cause determination by reference to fellow officers invalidated the arrest, a fortiori here the subsequent discovery that the police had information actually negating any probable cause must invalidate defendant's arrest." (*Id.,* at pp. 551-552.) ▮ From *Ramirez* we infer that it is incumbent on the prosecution to produce the actual arrest warrant or certified copy so that the defense has an opportunity to ascertain whether the warrant was valid at the time of the defendant's arrest.

▮ In the instant action no copy of the warrant was ever presented. Nor was evidence produced to show that the warrant was valid at the time of appellant's arrest. Although defense counsel continually requested better evidence of the warrant's existence than the testimony of Detective Rossman, none was forthcoming. Consequently, the defense was unable to test the validity of the warrant at the time of appellant's arrest. A rule requiring the production of an original warrant or certified copy upon request by the defense does not place an undue burden on the prosecution. (*People* v. *Burke* (1964) 61 Cal.2d 575, 578 [39 Cal.Rptr. 531, 394 P.2d 67]; *People* v. *Wohlleben, supra,* 261 Cal.App.2d at p. 466.) Accordingly, we find that the arrest based solely on a warrant that was never produced was made without probable cause.

Respondent further asserts that without regard to the arrest warrant there existed an independent basis for the arrest. There is evidence that a beer can was thrown from the automobile in which appellant and Ms. Summers were riding shortly before the police attempted to stop them. Respondent claims that this act constituted a misdemeanor committed in the officer's presence, and thus gave Detective Bohannan probable cause to stop the car independent of the warrant. Detective Bohannan testified, however, that the reason he stopped the car was that he thought the occupants fit the description of appellant and Ms. Summers, and he knew there was an arrest warrant outstanding for appellant. Detective Bohannan never claimed that he stopped the car because of the beer can being thrown from it.

▮ Because respondent cannot introduce a new theory on appeal to justify an arrest (*Mestas* v. *Superior Court* (1972) 7 Cal.3d 537, 542 [102 Cal.Rptr. 729, 498 P.2d 977]), we cannot consider this argument. As the Supreme Court stated in *People* v. *Miller* (1972) 7 Cal.3d 219, 227 [101 Cal.Rptr. 860, 496 P.2d 1228]: "the People cannot introduce on appeal a new theory to justify the search, in view of the defendant's lack of oppor-

tunity to present evidence in response to it, to cross-examine the prosecuting witnesses on testimony supporting the new theory, or to argue before the trier of fact the theory's invalidity or inapplicability."

In light of the above discussion, we must conclude that the trial court erred in denying appellant's motion to suppress all evidence obtained as a result of the arrest.

One of the reasons for detailed procedures for suppression hearings is so the parties will present all legal theories relative to the admissibility question to prevent the relitigation of that issue. (*Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626, 640 [108 Cal.Rptr. 585, 511 P.2d 33].) " 'To allow a reopening of the question on the basis of new legal theories to support or contest the admissibility of the evidence would defeat the purpose of Penal Code section 1538.5 and discourage parties from presenting all arguments relative to the question when the issue of admissibility is initially raised.' [Citations.]" (*People* v. *Brooks* (1980) 26 Cal.3d 471, 483 [162 Cal.Rptr. 177, 605 P.2d 1306].) As the Supreme Court noted in *People* v. *Brooks, supra,* the party that loses a suppression motion on appeal does not have an absolute right to retry the motion unless it is based upon a theory previously advanced at the trial level, but upon which the trial court did not base its decision. (See also, *People* v. *Nelson* (1981) 126 Cal.App.3d 978, 982 [179 Cal.Rptr. 195].)

In the present case, the People did not at the suppression hearing or at trial advance another theory than the one here addressed upon which a new suppression hearing could properly be based. There appears no reason why the People should be allowed a second suppression hearing when if the position of the parties were reversed, the defendant would not be permitted another hearing.

As the court stated in *Bunnell, supra,* "reversal of the prior judgment . . . return[s] the case for trial on the original accusatory pleading in the posture in which it had been *prior to the waiver of jury trial and stipulation to submit the cause on the transcript,* . . ." (*Id.,* at p. 608, italics added.)

Respondent claims the reversal should start this case anew. Yet, the waiver and stipulation occurred on March 8, 1982, whereas the suppression motion was heard and denied on February 3 and 4, 1982. Thus, returning the case to the posture it was in before the waiver and stipulation returns the case to the position it was in on March 8, 1982, before the trial.

Appellant also challenges his conviction of second degree burglary of the Pray residence due to the insufficiency of the evidence. Appellant claims

there was no evidence that he entered the Pray residence as alleged in the information, and asserts that the mere possession of stolen property is not enough to support a conviction for burglary.

 It has been held that possession of stolen goods, especially recently stolen goods, as here, tends to indicate guilt if corroborated by guilty conduct. (*Nugent* v. *Superior Court* (1967) 254 Cal.App.2d 420, 425 [62 Cal.Rptr. 217].) The testimony of Detective Bohannan indicated that after he stopped appellant, appellant ran from his car. This fact, coupled with the fact that the car contained the proceeds of two recent burglaries would normally be sufficient to support appellant's conviction.

However, since the prosecution failed to prove probable cause for stopping appellant, evidence of his subsequent behavior and property found in the automobile must be suppressed. Thus, proof of appellant's involvement in the burglary of the Pray residence is insufficient.

Appellant also claims that a fingerprint card obtained from the Azuza Police Department was improperly admitted into evidence over his objection. Respondent agrees that a proper foundation was not laid for the admission into evidence of that fingerprint card which was used for comparison with a fingerprint found on a lamp at the Toy residence. Respondent claims this is irrelevant since the fingerprint found on the lamp at the Toy residence also matched those from the fingerprint card taken upon appellant's arrest.

However, because the fingerprint card obtained upon appellant's arrest was a direct result of the invalid arrest it is inadmissible. Without either of the two fingerprint cards for comparison, the prosecution is unable to match appellant's fingerprints with those found in the Toy home.

Respondent argues that at retrial, the previously dismissed charges against appellant may be reinstated.

 The Supreme Court stated in *People* v. *Collins* (1978) 21 Cal.3d 208 [145 Cal.Rptr. 686, 577 P.2d 1026], that upon retrial of a case in which there was originally a bargain or agreement, the bargain will continue to be given effect *only* if it is still binding on both parties. (*Id.,* at pp. 214-216.) Furthermore, in *Bunnell, supra,* 13 Cal.3d 592, under facts analogous to ours, the court stated, "petitioner is no longer bound by his waivers and stipulation." (*Id.,* at p. 608.) Since appellant is no longer bound by his waivers and stipulations, the prosecution should not be bound by theirs. The agreement is no longer valid and the previously dismissed charges against appellant may be reinstated.

Finally, appellant asserts that upon retrial, the maximum sentence which may be imposed upon him is three years. Respondent disagrees, claiming that since the sentence was the result of the bargain, the guarantee of a maximum three-year sentence is withdrawn. We agree with respondent.

As previously mentioned, *Bunnell* ruled that reversal of a judgment returned the case for trial on the original accusatory pleading in the posture in which it had been prior to the waiver of jury trial and the parties are no longer bound by the terms of the previous bargain.

The facts in *People* v. *Collins, supra,* 21 Cal.3d 208, cited by appellant, are inapposite to those in the case at bench. In *Collins,* the defendant challenged his conviction on the basis of the repeal of the statute under which he was convicted, or as the court termed it "external events." (*Id.,* at pp. 216-217.) The *Collins* court found it proper to fashion a particular remedy to give that defendant partial benefits of a plea bargain agreement he made with the prosecution since he was not repudiating the underlying agreement. (*Id.,* at p. 216.)

In contrast, appellant's challenge goes to the heart of the case against him. He has successfully repudiated the bargain he had with the prosecution on the grounds that he was not properly advised of his constitutional rights. Thus, the parties are returned to their respective positions prior to the bargain, and the guarantee of a maximum three year sentence may be withdrawn.

The judgment is reversed.

Kline, P. J., and Smith, J., concurred.