[No. A049999. First Dist., Div. Two. July 15, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE EUGENE ARMSTRONG, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1(a), this opinion is certified for publication with the exception of part II.B.

230

## COUNSEL

Harvey A. Sniderman, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Martin S. Kaye and George F. Hindall III, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PETERSON, J.**—George Eugene Armstrong appeals from a judgment of conviction following a jury verdict finding him guilty of possession of cocaine. (Health & Saf. Code, § 11350.) He claims his conviction must be reversed because the trial court erred when it denied his Penal Code section 995 (section 995) motion. Appellant also maintains the trial court improperly denied his request for probation.

In affirming, we will hold that the "good-faith exception" enunciated in *United States* v. *Leon* (1984) 468 U.S. 897, 922-925 [82 L.Ed.2d 677, 698-700, 104 S.Ct. 3405], relied on to validate an arrest, does not relieve the prosecution, on defense demand therefor, of the necessity of proving that the arrest warrant information furnished to the arresting officer and justifying the arrest was not falsely manufactured. On reexamining *People* v. *Romanoski* (1984) 157 Cal.App.3d 353 [204 Cal.Rptr. 33], we will further hold that the means of proving such arrest warrant information was not falsely manufactured is not exclusively limited to production of the original arrest warrant or a certified copy thereof.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On July 27, 1989, near 3:30 p.m., Richmond Police Officer Edward Sousa was on patrol when he saw appellant, who was driving a moped, cut in front of a car causing it to brake suddenly. Sousa stopped appellant and asked him for his driver's license. Appellant was unable to produce one. Sousa then asked his dispatcher to run a license and warrant check on appellant. The dispatcher replied that appellant's license had been suspended and that a warrant had been issued for his arrest.

Sousa arrested appellant and searched him for weapons. He found none but noticed a brown paper bag protruding from appellant's pocket. Sousa asked what was inside the bag. Appellant replied, "candy."[1]

---

[1] On appellant's *in limine* motion, this statement was excluded from presentation to the jury.

Sousa placed appellant in the patrol car and transported him to the Richmond police station. While booking appellant, Sousa noticed that the paper bag was gone. When Sousa asked what had happened to the bag, appellant replied that he knew nothing about a paper bag. Sousa then went to the patrol car and searched it. There, tucked into the rear seat, he found a brown paper bag. Inside were seven plastic bags each containing a small amount of cocaine.

Based on these facts, a jury convicted appellant of possession of cocaine. (Health & Saf. Code, § 11350.) In a court trial which followed, a probation ineligibility allegation pursuant to Health and Safety Code section 11370, subdivision (a) was found true. After the court sentenced appellant to the low term of one year and four months for his conviction, he timely filed the present appeal.

## II. DISCUSSION

### A. *Denial of Section 995 Motion*

Appellant's first claim of error relates to denial of his pretrial motion to dismiss the information filed in superior court.

At the preliminary hearing in the municipal court, Officer Sousa testified he arrested appellant because he was advised that appellant's license had been suspended[2] and that a warrant had been issued for his arrest. Citing *Romanoski, supra,* and *People* v. *Ramirez* (1983) 34 Cal.3d 541 [194 Cal.Rptr. 454, 668 P.2d 761], defense counsel, on apparent prehearing notice to the prosecution, moved that the arrest warrant be produced to prove that probable cause for the arrest in fact existed. In response, the prosecutor presented, as People's exhibit 2,[3] a computer printout of official information received, as pertinent here, by the Richmond Police Department from the Contra Costa County Sheriff's Department; it described the warrant by number, and characterized it as an "outside misdemeanor warrant," issued for appellant's failure to appear on a misdemeanor charge of violation of Penal Code section 417, subdivision (a)(2) (exhibiting a firearm in a rude, angry, or threatening manner). Appellant argued that under *Romanoski* the computer printout was insufficient and, thus, moved to suppress the cocaine obtained following his arrest. The magistrate denied appellant's Penal Code section 1538.5 motion to suppress the cocaine seized from him after his arrest for lack of the warrant's production.

---

[2]Driving with a suspended license is a misdemeanor justifying a full custodial arrest. (Veh. Code, §§ 14601.1, 40303, subd. (i).)

[3]Exhibit 2, omitted from the original record on appeal, was added thereto on our order.

After first expressing skepticism that a ground for appellant's arrest was his driving on a suspended license,[4] the magistrate denied the motion to suppress, ruling that exhibit 2 was "adequate" to prove probable cause therefor.

In the superior court, appellant filed a motion under section 995 to set aside the information charging him with cocaine possession. The "sole issue" he urged was "the very narrow proposition that the District Attorney's Office . . . under *Romanoski* is required to produce the actual warrant at the Preliminary Hearing, which they did not do." Although the People briefed an alternative issue (on which the Attorney General on this appeal solely relies), i.e., whether independent probable cause for appellant's arrest existed aside from the arrest warrant,[5] neither the trial court nor the committing magistrate considered such claim of independent probable cause as justifying appellant's arrest and search incident thereto.

The superior court, in denying appellant's section 995 motion, stated: "This is once again an example of a case that is saved by the broad brush of *Leon*."

 ■ Appellant, at the superior court hearing on his section 995 motion, stated the "sole issue" as failure "to produce the actual warrant at the Preliminary Hearing," and did not urge as error either the lack of foundation or a hearsay objection to exhibit 2 made expressly or implicitly at the preliminary hearing.[6] The district attorney, arguing *in limine* motions at trial, characterized the grounds of appellant's arrest as "pursuant to [that]

---

[4]Officer Sousa's testimony on cross-examination belied his assertion that appellant was arrested for driving on a suspended license. "[Defense Counsel]: Q. If it [appellant's offense] had just been driving on a suspended license, you would have just written a ticket; right? [¶] A. . . . That is usually how it is done, yes. [¶] . . . [¶] THE COURT: You give a ticket for driving on a suspended license and then they drive off[?] [¶] . . . [¶] THE WITNESS: They either walk or we usually tow the vehicle."

[5]The district attorney urged that probable cause existed to arrest appellant for violation of Vehicle Code sections 14601.1 (driving on a suspended license) and 21755 (failure to safely pass another vehicle on the right), and that so long as the arresting officer had probable cause to arrest for either such offense, "the arrest and subsequent search were lawful regardless of the possible lack of probable cause for the warrant violation." The Attorney General restricts the rationale of this argument to the existence only of probable cause to arrest for violation of Vehicle Code section 14601.1.

[6]Appellant's failure to renew, in the superior court, an objection made to exhibit 2 at the preliminary hearing on grounds of hearsay or lack of foundation constituted a waiver, barring consideration of those issues on appeal. (Evid. Code, § 353, subd. (a); *People v. Clark* (1990) 50 Cal.3d 583, 623-624 [268 Cal.Rptr. 399, 789 P.2d 127]; *People v. Dorsey* (1974) 43 Cal.App.3d 953, 960 [118 Cal.Rptr. 362] [an objection on another ground was insufficient to save on appeal the question of lack of foundation].) Accordingly, for purposes of this appeal, we treat exhibit 2, inter alia, as properly admitted evidence of official information received by the Richmond Police Department from the Contra Costa County Sheriff's Department.

warrant," and stated "Officer Sou[s]a was conducting the arrest pursuant to a warrant out of the Bay Court on an unrelated case."

We find it unnecessary to decide the People's claim on appeal of grounds for arrest independent of the arresting officer's receipt of arrest warrant information. We will rest our decision on analysis of the two principal questions this case presents: the effect here of the "good-faith exception" of *Leon*, and the continuing viability of the "rule" of *Romanoski*.

### 1. *California Law Pre-Leon*

California courts have long and consistently rejected the contention that probable cause for arrest is established where arresting officers are proven to have relied on information furnished by other officers in their own departments, *without further prosecution proof the information on which the arresting officers acted was actually given to those officers who transmitted that information to the arresting officers*. The *further proof* requirement was not established to prove the information furnished the arresting officer was true; rather, it was established to prove that the officers furnishing the information to the arresting officers which triggered the arrest had actually received it, i.e., that the information was not falsely manufactured by those reporting it to the arresting officers to furnish ostensible grounds of probable cause for arrest. This requirement is sometimes called the *"Remers* rule" or the *"Harvey-Madden* rule." (*Remers* v. *Superior Court* (1970) 2 Cal.3d 659, 666-667 [87 Cal.Rptr. 202, 470 P.2d 11]; *People* v. *Harvey* (1958) 156 Cal.App.2d 516, 523-524 [319 P.2d 689]; *People* v. *Madden* (1970) 2 Cal.3d 1017, 1021 [88 Cal.Rptr. 171, 471 P.2d 971].)

This court (Div. Two) staked out this rule in 1958 in *People* v. *Harvey*, *supra*, a case in which probable cause for an arrest asserted by an arresting officer was a communication he received from a superior officer who was deceased at the time of trial. "To permit the subordinate to justify the arrest on the superior's unsworn statement to the subordinate that the superior has obtained information from another justifying the arrest, however, would permit police officers to justify arrests by hearsay on hearsay, without requiring the sworn testimony of anybody that the *information upon which the arrest was made was actually given to any police officer*. To allow this would permit the manufacture of reasonable grounds for arrest within a police department by [such means] without establishing under oath that the information had in fact been given to any officer by the informer, or indeed that there was an informer at all." (156 Cal.App.2d at p. 523, conc. opn. of Dooling, J., and Draper, J., italics added.)

In 1970, the Supreme Court decided *Remers* v. *Superior Court, supra,* and *People* v. *Madden, supra. Remers* involved a search initiated, inter alia,

where the officers who had allegedly told the arresting officer about the arrestee's narcotics sales, a basis on which the prosecution relied for probable cause to arrest, were never produced. *Remers* relied on *Harvey* as requiring negation of the "manufacture" of reasonable grounds for arrest within a police department by the officer who transmits information furnishing probable cause for arrest to the arresting officer by establishing how the information had in fact been obtained by the informing officer; i.e., to prevent " '*every utterance of a police officer [from] instantly and automatically acquir[ing] the dignity of official information* . . . ,' " and to prevent a convenient creation of reasonable cause for arrest by such two-step communication which would dissolve Fourth Amendment safeguards. (2 Cal.3d at p. 667, italics added.) "In sum, when an officer furnishes to another officer information which leads to an arrest, *the People must show the basis for the former officer's information*." (*Ibid.*, italics added.)

Similarly, in *People* v. *Madden, supra,* the majority, relying on *Remers, supra,* said: " 'It is well settled that while it may be perfectly reasonable for officers in the field to make arrests on the basis of information furnished to them by other officers, "*when it comes to justifying the total police activity in a court, the People must prove that the source of the information is something other than the imagination of an officer who does not become a witness.*" (Citations.)' " (2 Cal.3d at p. 1021, italics added.)

Thus, *Remers, Harvey,* and *Madden* all focus on the necessity to justify total police activity, establishing probable cause for arrest when an officer arrests a defendant in reliance on information communicated by another officer, by proof the information transmitted to the arresting officer was obtained (and, thus, not falsely manufactured) by the transmitting officer.[7]

In *People* v. *Ramirez, supra,* 34 Cal.3d 541, the Supreme Court disapproved *People* v. *Marquez, supra,* 237 Cal.App.2d 627, which had validated a good faith arrest made on a recalled warrant, and disapproved cases relying

---

[7]Prior to *Remers* and *Madden,* some appellate courts had upheld arrests and searches incident thereto with the observation, in one form or another, that "police officers [in making an arrest] may rely on information coming to them from official sources [citations]. The information provided by one police department to another must be presumed reliable unless it is manifestly shown to be otherwise." (*People* v. *Schellin* (1964) 227 Cal.App.2d 245, 251 [38 Cal.Rptr. 593]; cf. *People* v. *Honore* (1969) 2 Cal.App.3d 295, 299-300 [82 Cal.Rptr. 639]; *People* v. *Sanders* (1967) 250 Cal.App.2d 123, 130-131 [58 Cal.Rptr. 259]; *People* v. *Pease* (1966) 242 Cal.App.2d 442, 447-450 [51 Cal.Rptr. 448]; *People* v. *Marquez* (1965) 237 Cal.App.2d 627, 633 [47 Cal.Rptr. 166], disapproved by *People* v. *Ramirez, supra,* 34 Cal.3d at p. 550; *People* v. *Hood* (1957) 150 Cal.App.2d 197, 201 [309 P.2d 856].)

The implication of such cases appears to be that proof of good faith reliance of the arresting officer on such information conclusively establishes probable cause for arrest, producing substantially the result respondent urges is dictated here by *United States* v. *Leon, supra,* 468 U.S. 897.

on *Marquez.* (34 Cal.3d 541, at p. 550.) The *Ramirez* court held that arrests made on a recalled warrant are invalid, regardless of the good faith actions of the officers in the field who are erroneously advised the warrant validly exists.[8]

*Ramirez* relied on "analogous federal authority" (34 Cal.3d at pp. 544-546), including *Whiteley* v. *Warden* (1971) 401 U.S. 560 [28 L.Ed.2d 306, 91 S.Ct. 1031]. *Whiteley* involved an arrest based on the transmission to the arresting officer of a police radio bulletin describing defendant, another person, their vehicle, and items taken in a burglary. That bulletin was generated by an arrest warrant issued by a Wyoming justice of the peace for defendant and another person, based on a complaint signed by a sheriff acting on an unnamed informer's tip. Acting on the bulletin and that arrest warrant information transmitted to him, the arresting officer arrested both defendant and the other person occupying the vehicle he stopped, and found loot from the burglary in searching that vehicle. *Whiteley* held that, since the complaint on which the warrant issued consisted of nothing more than the complainant's conclusion as to the burglars' identities, it failed to furnish probable cause for issuance of the warrant; that, since the arresting officer lacked any factual data corroborating the informer's tip identifying defendant and his companion as the burglars, defendant's arrest violated the Fourth and Fourteenth Amendments to the federal Constitution; and that the evidence secured incident to the arrest should have been excluded.

Justice Harlan, writing for the *Whiteley* majority, recognized the arresting officer acted in good faith, stating: "We do not, of course, question that the Laramie police were entitled to act on the strength of the [police] radio bulletin. Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause. *Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest.*" (401 U.S. at p. 568 [28 L.Ed.2d at p. 313], italics added.)

*Ramirez* adopted the " 'fellow officer' " or " 'collective knowledge' " rule; i.e., an arresting officer, relying in good faith on official information transmitted to him that an outstanding warrant exists, has the " 'collective knowledge' " of the police imputed to him, which includes the knowledge of other

---

[8]*Ramirez* distinguished *Honore, supra,* 2 Cal.App.3d 295 and distinguished (and subsequently disapproved) a similar case, *People* v. *Knight* (1970) 3 Cal.App.3d 500 [83 Cal.Rptr. 530], on the ground that causes independent of good faith reliance on officially transmitted information existed, justifying the arrest. (34 Cal.3d at pp. 550-551.)

police authorities that *the recall* of the arrest warrant was *not* entered into the appropriate data processing systems by the responsible law enforcement personnel. (34 Cal.3d at p. 547.)

*Ramirez* traced and characterized *Whiteley* as teaching " 'that probable cause for arrest is not conclusively established by a police communication asking that the arrest be made, for otherwise such a communication would allow the police to make seizures without the grounds required under the Fourth Amendment.' [Citation.]" (34 Cal.3d at p. 545.)

*People* v. *Rice* (1967) 253 Cal.App.2d 789 [61 Cal.Rptr. 394] followed *Harvey* while summing up the problems of proof in cases such as that at bench. "When suspects are arrested without warrant by officers who have not, themselves, gathered all of the information which gives rise to probable cause, peculiar problems of proof arise. On the one hand, it is obvious that the law cannot demand that investigations be conducted by single officers who then must also make the arrest. Criminal investigation is not that simple. [¶] *On the other hand, the mere fact that the arresting officer believes, in all good faith, that somebody else has gathered sufficient information to make the arrest legal, cannot relieve the prosecution of the burden of proving the legality of the arrest, if it is challenged.* [Citations.]" (*Id.* at p. 792, italics added.)

In a footnote, *Rice* discussed *Schellin, Hood,* and *Sanders* without following them: "The case at bar does not make it necessary to determine whether these decisions [upholding arrests on the rationale that police officers may justifiably rely on information received by official sources] represent an exception to the strict requirements of proof announced by the *Harvey-Pease-Hunt* line of cases mentioned in the opinion. *We assume, in defendant's favor, that while the officer on the beat may reasonably rely on information coming to him from official sources when making the arrest, this does not relieve the People, at the trial, from the burden of proving that the source of the information was something other than the imagination of another law enforcement officer.*" (253 Cal.App.2d at p. 793, fn. 1, italics added.) We agree with this emphasized language of *Rice.*

### 2. *The Effect of Leon*

The suggested tension between *Ramirez* and *United States* v. *Leon, supra,* inter alia, lies in one rationale the former asserts for its ruling: "[T]his result is consistent with the *deterrence goal of the exclusionary rule.* In this case, of course, we focus not on the actions of the arresting officer but on the conduct of law enforcement generally. Suppressing the fruits of an arrest made on a recalled warrant will deter further misuse of the computerized criminal

information system and foster more diligent maintenance of accurate and current records." (34 Cal.3d at p. 547, italics added.)

*Leon*, inter alia, dealt with the deterrence implications of the exclusionary rule as follows: If the conduct of an officer executing an invalid search warrant " 'was pursued in complete good faith, however, *the deterrence rationale loses much of its force*' "; the exclusionary rule "*cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity.*" (468 U.S. at p. 919 [82 L.Ed.2d at p. 696], italics added.) The *Leon* court further refused to "conclude that admitting evidence obtained pursuant to a warrant while at the same time declaring that the warrant was somehow defective will in any way reduce judicial officers' professional incentives to comply with the Fourth Amendment, encourage them to repeat their mistakes, or lead to the granting of all colorable warrant requests." (P. 917 [82 L.Ed.2d at p. 695], fn. omitted.) "We conclude that the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." (*Id.* at p. 922 [82 L.Ed.2d at p. 698].)[9]

The lower court implicitly found that the "broad brush" of *Leon*'s rejection of the alleged benefits of exclusion of evidence procured by a search made in objective good faith, and that proof of such objective good faith of the searching (arresting) officer, conclusively established probable cause for the search (arrest), compelling rejection of the requirement of California authority, *ante*, that probable cause for arrest be established in the case at bench by proof that the arrest warrant information communicated to the arresting officer was not manufactured by the officer transmitting it.[10]

*Leon*, decided the year after *Ramirez*, involved a state search warrant ultimately found by a federal district court to have been issued upon an affidavit insufficient to establish probable cause therefor, because of the inclusion of stale information and the failure to establish the informant's

---

[9]*Leon*, inter alia, posits three situations where deference to a magistrate's finding of probable cause in issuing a search warrant is not required: where a knowing or recklessly false affidavit procured the warrant; where the magistrate ceases to perform a neutral and detached function, becoming a police rubber stamp; and where the affidavit does not set forth a reasonable substantial basis for the magistrate's probable cause determination. (468 U.S. at pp. 914-915 [82 L.Ed.2d at pp. 692-694].) In such cases, suppression of evidence remains an appropriate remedy to which the good faith exception does not apply. (*Id.* at pp. 922-923 [82 L.Ed.2d at pp. 698-699].)

[10]*In re Lance W.* (1985) 37 Cal.3d 873, 896 [210 Cal.Rptr. 631, 694 P.2d 744] upheld the constitutionality of article I, section 28 of the California Constitution, abolishing use of independent state grounds and requiring application of federal grounds as a basis of excluding relevant evidence from criminal proceedings.

credibility. In holding the exclusionary rule of the Fourth Amendment did not bar the prosecution's use of evidence officers obtained in reasonably relying on that search warrant, *Leon* emphasized a continuum of the Supreme Court's long-evolving balancing approach toward the Fourth Amendment exclusionary rule, which weighs "the costs and benefits of preventing the use in the prosecution's case in chief of *inherently trustworthy* tangible evidence obtained in reliance on a search warrant issued by a detached and neutral magistrate that ultimately is found to be defective." (468 U.S. at p. 907 [82 L.Ed.2d at p. 688], italics added.)

 The *Leon* rationale is that "The Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands and an examination of its origin and purposes makes clear that the use of fruits of a past unlawful search or seizure 'work[s] no new Fourth Amendment wrong.' [Citation.] . . . The [exclusionary] rule thus operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.' [Citation.] [¶] Whether the exclusionary sanction is *appropriately imposed in a particular case*, our decisions make clear, is 'an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.' [Citation.]" (468 U.S. at p. 906 [82 L.Ed.2d at pp. 687-688], italics added.)

*Leon*'s good faith exception to the exclusionary rule, allowing admission of the fruits of an executed search warrant issued without probable cause, was held by the Third District (per Sims, J.) in *People* v. *Palmer* (1989) 207 Cal.App.3d 663 [255 Cal.Rptr. 55] to apply to searches incident to an arrest pursuant to warrant. Palmer's arrest was made on a bench warrant; the incident search yielded illegal sawed-off shotguns. The arresting officer testified that "he knew it was not supported by an 'affidavit' describing defendant's contemptuous conduct." (*Id.* at p. 670.) *Palmer* held the good faith test of *Leon* applied to admission of evidence obtained incident to an arrest pursuant to warrant, because the arresting officer could in good faith have reasonably concluded *no affidavit was required* for the arrest warrant's issuance since an appropriate declaration of service of the subpena to which defendant failed to respond was filed, and no more by way of affidavit in support of the bench warrant was required.[11]

---

[11]In applying *Leon, Palmer* states: "Excluding evidence obtained incident to an arrest under a subsequently invalidated arrest warrant cannot be justified by the deterrent effect on the issuing judge or magistrate because the exclusionary rule is not designed to punish judicial error. [Citation.] Nor can exclusion be justified by its deterrent effect on the law enforcement officer because, by obtaining an arrest warrant and faithfully following its terms, the officer has acted as he is supposed to act. [Citation.]" (207 Cal.App.3d at p. 669.)

Against this background, we must first decide this question: When an officer acts in good faith in arresting a defendant and recovering evidence from a search incident thereto, in reliance on arrest warrant information communicated by an informing officer, must the prosecution, after *Leon*, in establishing probable cause for the arrest, prove such warrant information was in fact received and not manufactured by the informing officer?

We believe *Leon* was misapplied by the trial court in answering this question and, thus, in ruling that the arresting officer's probable cause to arrest was conclusively established by the police communication to him of the warrant information. Initially, we observe that *Leon* clearly does *not* validate the fruits of a search in *all* instances where the arresting officer acted in good faith in the execution of a search warrant. *Leon* reserved the application of the exclusionary rule in several instances[12] and, thus, did not equate a finding that the searching officer acted in good faith reliance on the existence of a search warrant to a predicate finding of probable cause in all such instances.

*Leon*'s reliance on *Whiteley, supra,* the same case on which the California Supreme Court relied in *Ramirez, supra,* 34 Cal.3d 541, makes this proposition self-evident. *Whiteley* recognized that, while an arresting officer is entitled to act on a radioed request for arrest on an outstanding warrant, probable cause for that arrest is *not* conclusively established by a police communication that the arrest be made. (*People* v. *Ramirez, supra,* 34 Cal.3d at pp. 544-545.) The basis for the nontestifying informing officer's information must be proven to establish probable cause and negate its false manufacture. *Whiteley* states, consistently with California authority, that, when the officers broadcasting a request for aid in arresting a suspect for whom they procured a magistrate's arrest warrant do not provide the magistrate with information sufficient to support an independent judicial assessment of probable cause to issue the warrant, the ensuing *"illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest."* (401 U.S. at p. 568 [28 L.Ed.2d at p. 313], italics added.)

*Leon* also relied on *Whiteley,* observing: "References to 'officer' throughout this opinion should not be read too narrowly. It is necessary to consider the objective reasonableness, not only of the officers who eventually executed a warrant, *but also of the officers who originally obtained it or who provided information material to the probable-cause determination. Nothing in our opinion suggests, for example, that an officer could obtain a warrant on the basis of a 'bare bones' affidavit and then rely on colleagues who are*

---

[12]See footnote 9, *ante.*

*ignorant of the circumstances under which the warrant was obtained to conduct the search.* See *Whiteley* v. *Warden*, 401 U. S. 560, 568 (1971)." (468 U.S. at p. 923, fn. 24 [82 L.Ed.2d at p. 698], italics added.)

It is first obvious that, where a search occurs incident to an arrest warrant a reporting officer tells the arresting officer exists, the objective reasonableness of the reporting officer cannot be determined if no evidence he obtained the warrant information he transmits is produced. *Remers, Harvey,* and *Madden* require production of such evidence to justify the totality of police activity in such a situation and to negate an in-house manufacture of false grounds for arrest by police agencies. *Leon,* relying on *Whiteley,* supports the continued application of that principle.

In short, it seems logically certain that, if, as in *Leon,* an officer obtaining a " 'bare bones' affidavit" cannot rely on colleagues ignorant of that fact to conduct a valid search on the search warrant thereby procured, then an officer who has no basis for reporting the existence of an arrest warrant cannot rely on colleagues ignorant of that fact to make a valid arrest.[13]

We hold that *Leon* did not eliminate the *Remers-Harvey-Madden* requirement that, where an arrest is made on communicated police information of an outstanding arrest warrant, the prosecution if challenged must prove the transmitted arrest warrant information, acted on in good faith by the arresting officer, was in fact received by the transmitting officer.

### 3. *Proof*

■ The second issue presented is this: What proof must the prosecution offer, when challenged, to prove that the informing officer's assertion to the arresting officer of a warrant's existence was not the false manufacture of probable cause?

Although the lower court mistakenly relied on *Leon* in support of its ruling on appellant's section 995 motion, we will further review its ruling against the record to determine whether denial of that motion should be affirmed because police manufacture of probable cause for appellant's arrest was circumstantially negated. (See *People* v. *Mason* (1991) 52 Cal.3d 909, 944 [277 Cal.Rptr. 166, 802 P.2d 950] ["It is axiomatic that we review the trial court's rulings and not its reasoning. [Citations.]"]; accord, *People* v. *Barbarick* (1985) 168 Cal.App.3d 731, 735, fn. 1 [214 Cal.Rptr. 322]; *D'Amico*

---

[13]This court (Div. Five) has held that *Leon* does not change the holding in *Ramirez,* imposing the exclusionary rule to a search conducted pursuant to an arrest warrant recalled at the time the arrest was made. (*People* v. *Ivey* (1991) 228 Cal.App.3d 1423, 1426-1428 [279 Cal.Rptr. 554].)

v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10]; *People* v. *Evans* (1967) 249 Cal.App.2d 254, 257 [57 Cal.Rptr. 276] [motion to dismiss complaint].)

Appellant relies on certain language we used in *People* v. *Romanoski, supra.* There we said, inter alia: "From *Ramirez* we infer that it is incumbent on the prosecution to produce the *actual arrest warrant or certified copy* so that the defense has an opportunity to ascertain whether the warrant was valid at the time of the defendant's arrest. [¶] . . . A *rule* requiring the production of *an original warrant or certified copy* upon request by the defense does not place an undue burden on the prosecution. (*People* v. *Burke* (1964) 61 Cal.2d 575, 578 . . . ; *People* v. *Wohlleben* [1968] 261 Cal.App.2d [461,] 466.)" (157 Cal.App.3d at p. 360, italics added.) The People contended in *Romanoski* "that the admission into evidence of a copy of the warrant, in addition to testimony from [the informing detective] who saw the warrant and told [the arresting officer] of its existence, was sufficient to establish the warrant's existence." (P. 357.) Although the informing detective possessed a copy of a " 'memorandum of the existence of a warrant' " (*id.* at pp. 357-358), the prosecution produced neither the warrant nor a certified or uncertified copy thereof, and did not offer the memorandum of the warrant's existence into evidence. *Romanoski* concluded the trial court erred on that record in denying appellant's motion to suppress because it apparently found the testimony of the informing officer, that he had seen a copy of the warrant for appellant's arrest, insufficient to negate the manufacture of probable cause for the arrest.[14] The insufficiency of that evidence removed any necessity to postulate the "rule" *Romanoski* inferred from *Ramirez,* which appellant urges on us here. That "rule" was, thus, dictum and supported by inapposite authority.

*People* v. *Burke* (1964) 61 Cal.2d 575, 578 [39 Cal.Rptr. 531, 394 P.2d 67] involved a search warrant, not an arrest warrant, and by way of dictum simply stated: "Ordinarily proof of the existence of a search warrant is a simple matter, and in the face of an objection that the evidence had been illegally obtained it seems obvious that the prosecution will produce a warrant if one exists."

*People* v. *Wohlleben* (1968) 261 Cal.App.2d 461, 467 [67 Cal.Rptr. 826], unlike the case at bench, was one where the defense *"preserved* its objection

---

[14]We need not, and do not here, reexamine the validity of this conclusion of *Romanoski* in light of *Remers, Harvey,* and *Madden.* Nor do we pass on any issue concerning the validity of the use of hearsay testimony at a preliminary hearing under Proposition 115, which added section 30, subdivision (b) to article I of the California Constitution. We note this issue is pending in our Supreme Court. (See *Nollins* v. *Superior Court* (1990) 231 Cal.App.3d 1221 [274 Cal.Rptr. 487], review granted Dec. 13, 1990, S018273.)

by objecting to the introduction of secondary evidence to prove the contents of the warrants." *Wohlleben,* however, recognized that secondary evidence of the warrants' existence was allowed. (P. 466 ["Defendant having objected to the competency of the prosecution's evidence of the warrants, the court erred in not requiring that the original warrants be produced *or that a proper foundation be established* for the use of the secondary evidence."].)[15]

*Romanoski*'s inferred "rule" is belied by other relevant authority. *Harvey, supra,* pointed out the defect in justifying arrests by hearsay statements without requiring "the sworn *testimony* of anybody that *the information* upon which the arrest was made *was actually given* to any police officer." (156 Cal.App.2d at p. 523, conc. opn. of Dooling, J., and Draper, J., italics added.) *Madden, supra,* required the People to prove that the source of the information on which the arrest was based was " 'something other than the imagination of an officer' " who did not testify. (2 Cal.3d at p. 1021.) *Remers, supra,* was posited on the failure of the prosecution to show the basis for the information triggering an arrest which a reporting officer gave an arresting officer. (2 Cal.3d at pp. 666-667.) *Ramirez, supra,* did *not* involve the issue of the means of proof necessary to negate a false manufacture of arrest information by an officer transmitting such information to the arresting officer. That question was never decided by the court because the arrest warrant was conceded to have been *recalled and of no effect* when the arrest was made in reliance on it. Moreover, the *Ramirez* court recognized it was "settled that an officer in the field may rely on information communicated to him by fellow officers to establish probable cause to arrest." (34 Cal.3d at p. 547.)

*None* of these cases established, as appellant argues, that the *exclusive* method of proving warrant information communicated to the arresting officer was in fact received by the informing officer was to produce the actual arrest warrant or a certified copy thereof *or any particular evidence at all.* Such a rule has been rejected by other courts.

In *People v. Orozco* (1981) 114 Cal.App.3d 435 [170 Cal.Rptr. 604], the Second District dealt with a case in which a dispatcher, receiving a telephonic complaint, initiated a radio call to proceed to a scene where it was reported there was a vehicle whose occupants were drinking and where shots were being fired from within the vehicle. At the Penal Code section 1538.5 hearing, defense counsel objected to the testimony of the officer receiving the radio broadcast about its contents. The objection was on the ground that " 'The district attorney should have the original dispatcher, the declarant of

---

[15]In *Hewitt v. Superior Court* (1970) 5 Cal.App.3d 923, 930 [85 Cal.Rptr. 493], in questioning *Wohlleben*'s application of the best evidence rule, the court said: "The issue was not what the arrest warrant stated, but whether there was probable cause for an arrest . . . ."

such statement in court. Otherwise said probable cause and/or right to detain could be manufactured.'" (*Id.* at pp. 443-444.) Quoting *People v. Collin* (1973) 35 Cal.App.3d 416, 420 [110 Cal.Rptr. 869][16] and *Remers, Orozco* held that cartridges found by investigating officers within four to five feet of the passenger door of defendant's car "support[ ] a very strong inference that the police did not make up the information [as relayed by the dispatcher to the field officers] from the [anonymous] informant [who contacted that dispatcher]. Thus, the veracity of the dispatcher's statement that he received a call [from the anonymous informant] was circumstantially proved." (114 Cal.App.3d at pp. 444-445.) *Orozco* established that: "The best way of negating 'do it yourself probable cause' is to have the officer who received the information from outside the police department testify, *but that is not the only way.*" (P. 444, italics added.)[17]

The Sixth District followed *Orozco* in *People v. Johnson* (1987) 189 Cal.App.3d 1315 [235 Cal.Rptr. 62]. There, defendant contended no probable cause for his arrest was shown because the dispatcher, who relayed to arresting officers transmissions he had received concerning a possible burglary in progress, was not produced by the People to verify an unfabricated source for the hearsay report of the criminal activity.

*Johnson* summarized the *Harvey-Madden* rule as follows: " '[A]lthough an officer may make an arrest based on information received through "official channels," the prosecution is required to show that the officer who originally furnished the information had probable cause to believe that the suspect committed a felony.' " (189 Cal.App.3d at p. 1319.) The *Johnson* court stated the "theory first expressed in *Orozco*," which it followed, was "that the dispatcher or the person providing the probable cause need not testify *if other evidence is presented circumstantially proving that the police did not make up the information.*" (P. 1320, italics added.) *Johnson* also found the lower court's reliance on circumstantial evidence observed by officers at the scene was sufficiently corroborative of the information transmitted by the dispatcher to prove "the information transmitted to the officers must have

---

[16] " '[I]f the detaining officer himself does not have personal knowledge of facts justifying the detention, but acts solely on the basis of information or direction given him through police channels, the prosecution must establish in court, when challenged, *evidence showing that the officer who originally furnished the information . . . was in possession of facts amounting to circumstances short of probable cause which would have justified him to personally make the detention.*' " (*People v. Orozco, supra*, 114 Cal.App.3d at p. 444, italics added, internal quotation marks omitted by *Orozco*.)

[17] *Rice, supra*, analogously held a nonarresting officer's testimony regarding defendant's physical description reasonably allowed an inference that officer was the one who provided the description for incorporation into a "daily occurrence sheet" furnishing the information on which arresting officers made defendant's arrest, negating the "manufactur[e]" of matters set forth in that document. (253 Cal.App.2d at p. 793.)

come from some source outside the police department." (*Ibid.*) The Supreme Court denied a petition for review in *Johnson.*

The most direct way of proving police do not manufacture probable cause for an arrest, generated because one officer tells the arresting officer an arrest warrant exists, is production of that warrant or a certified copy. This is, however, "not the *only* way" in which such proposition may be proven. (*People* v. *Orozco, supra,* 114 Cal.App.3d at p. 444, italics added.)

Exclusively restricting the People to that means of proof, as appellant urges in reliance on dictum from *Romanoski,* is not supported by the rationale or holding of the authorities which establish the necessity of negating police manufactured probable cause in such situations.[18] (*People* v. *Ramirez, supra,* 34 Cal.3d at pp. 551-552; *People* v. *Madden, supra,* 2 Cal.3d at pp. 1020-1021; *Remers* v. *Superior Court, supra,* 2 Cal.3d at pp. 666-667; *People* v. *Harvey, supra,* 156 Cal.App.2d at p. 523 (conc. opn. of Dooling, J., and Draper, J.).) Proof that the warrant information precipitating the arrest was not manufactured may be made by circumstantial evidence other than the warrant or a certified copy. (*People* v. *Johnson, supra,* 189 Cal.App.3d at p. 1320; *People* v. *Orozco, supra,* 114 Cal.App.3d at pp. 444-445; see also *People* v. *Lazanis* (1989) 209 Cal.App.3d 49, 59 [257 Cal.Rptr. 180].)

In the present case, exhibit 2, accepted in evidence in the preliminary hearing, compiles official information received from outside sources by the Richmond Police Department containing, inter alia, information concerning the arrest warrant on which appellant was arrested. It describes the arrest warrant by number, and characterizes it as an outside misdemeanor warrant received through the Contra Costa Sheriff's Office and issued for appellant's failure to appear on a misdemeanor charge of violation of Penal Code section 417, subdivision (a)(2). Appellant does not contend on this appeal, nor did he in the lower courts, that the warrant so characterized by exhibit 2 had been withdrawn or recalled at the time of his arrest, or that it did not exist or was falsely represented to exist by anyone preceding his arrest.

The *Remers-Harvey-Madden* rule only requires prosecution proof that information justifying the arrest was actually given to the police officer who

---

[18]Carried to its logical extension, the proof requirement appellant urges us to impose would, inter alia, arguably deprive the People, in an appropriate case, of the benefit of Evidence Code section 1501 (section 1501), which states: "A copy of a writing is not made inadmissible by the best evidence rule if the writing is lost or has been destroyed without fraudulent intent on the part of the proponent of the evidence." In this context, we note that our Supreme Court recently relied upon section 1501 in allowing the prosecution to establish by secondary evidence the contents of the (lost) affidavit in support of an arrest warrant. (*People* v. *Wright* (1990) 52 Cal.3d 367, 391-393 [276 Cal.Rptr. 731, 802 P.2d 221].) The same rationale would apply to the arrest warrant itself and its contents.

furnished it to the arresting officer, i.e., proof that the source of the information on which the arrest was based was " 'something other than the imagination of an officer' " who did not testify. (*Remers* v. *Superior Court, supra,* 2 Cal.3d at p. 666.) The prosecution must simply show that the officer furnishing the information generating the arrest had probable cause to believe the arrest was justified. (*People* v. *Johnson, supra,* 189 Cal.App.3d at p. 1320.)

In summary, if cartridges found near an automobile, in which persons are arrested who are anonymously reported to a dispatcher as shooting a weapon, circumstantially prove the nontestifying dispatcher did not manufacture probable cause for arrest (*People* v. *Orozco, supra,* 114 Cal.App.3d at pp. 444-445); and if dispatcher information relayed to officers concerning a reported burglary in progress corroborated by what officers observed at the scene is circumstantially sufficient to relieve the prosecution from presenting that dispatcher's testimony relied on for probable cause (*People* v. *Johnson, supra,* 189 Cal.App.3d at p. 1320), then it seems logically certain that proof of transmission to one police department of official information from a different police agency, of the fact a warrant for arrest exists, even more clearly, if circumstantially, negates an inference of the manufacture of probable cause for arrest by the dispatcher or the police department employing him.

We hold that denial of appellant's section 995 motion was proper on the ground that in-house police manufacture of probable cause for appellant's arrest was circumstantially negated by record proof that the Richmond Police Department had received official information of an "outside misdemeanor warrant" for appellant's arrest from the Contra Costa Sheriff.

In so holding, we disavow any suggestion set forth in dictum in *Romanoski* [19] that, when transmitted information of an arrest warrant's existence is asserted as probable cause for arrest, negation of police manufacture of that probable cause can *only* be proven by production of the warrant or a certified copy thereof. Proof that the police did not falsify the arrest warrant information may be circumstantially proven by other means, as it was here.

[19]*Romanoski* has subsequently been cited twice. *People* v. *Davis* (1986) 187 Cal.App.3d 1250, 1253-1254 [232 Cal.Rptr. 428], decided by the Third District, cites *Romanoski* in dicta as requiring production of the actual arrest warrant or a certified copy thereof, defendant having been concededly arrested on a proven valid warrant eliminating the danger of "manufactured probable cause." The Supreme Court, in *People* v. *Wright* (1987) 43 Cal.3d 487, 494 [233 Cal.Rptr. 69, 729 P.2d 260], cites *Romanoski* on an unrelated issue. *Wright*'s reference to *Romanoski* is contained in the former's discussion of the applicability of *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], where a self-incrimination advisement and waiver is not given when a defendant submits the issue of his guilt or innocence on a preliminary transcript.

B. *Denial of Probation* *

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III. DISPOSITION

The judgment is affirmed.

Kline, P. J., and Benson, J., concurred.

---

*See footnote, *ante*, page 228.